**IN THE UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF OHIO
EASTERN DIVISION**

| | |
|---|---|
| SEAMAN CORPORATION<br>1000 Venture Blvd.<br>Wooster, OH 44691, | )<br>)<br>) CASE NO. 5:21-cv-02158<br>) |
| Plaintiff, | ) JUDGE<br>)<br>) |
| v. | ) **COMPLAINT**<br>) |
| ZURICH AMERICAN INSURANCE<br>COMPANY,<br>1299 Zurich Way<br>Schaumburg, IL 60196, | ) **(JURY DEMAND ENDORSED**<br>) **HEREON)**<br>)<br>)<br>) |
| and | )<br>) |
| EVEREST NATIONAL INSURANCE<br>COMPANY,<br>100 Everest Way<br>Warren, NJ 07059, | )<br>)<br>)<br>)<br>) |
| and | )<br>) |
| COMMERCE & INDUSTRY INSURANCE<br>COMPANY,<br>17 Water Street<br>New York, NY 10038, | )<br>)<br>)<br>)<br>) |
| Defendants. | )<br>)<br>) |

Plaintiff, Seaman Corporation ("Seaman"), states as follows for its Complaint against

Defendants Zurich American Insurance Company ("Zurich"), Everest National Insurance

Company ("Everest"), and Commerce & Industry Insurance Company ("C&I"):

## NATURE OF THE CASE

1.     This action arises from Zurich's and Everest's persistent breaches of numerous legal duties owed to their insurance policyholder with respect to underlying third-party product defect lawsuits filed by Target Corporation ("Target") against Seaman.

2.     As detailed below, in December 2018, Target filed two lawsuits against Seaman in the United States District Courts for the Northern District of Ohio (Seaman's local venue) and the District of Minnesota (Target's local venue).  Those two lawsuits are collectively referred to herein as the "Target Litigation."

3.     Seaman promptly notified its insurers – including Zurich, Everest, and C&I – of the Target Litigation in February 2019.

4.     Following such prompt notice and despite regular status updates from Seaman through its insurance broker, Marsh, demonstrating that Zurich's and Everest's duty to defend had been triggered by the Target Litigation, Zurich and Everest refused to honor their obligations to defend Seaman and left Seaman to fend for itself for over a year, incurring nearly $1 million in defense costs.

5.     Even after Zurich finally acknowledged its defense obligation in April 2020, it refused to provide Seaman with a full and complete defense by failing to pay a substantial portion of Seaman's defense costs, refused to acknowledge any indemnity obligation (despite common sense and the allegations and evidence in the Target Litigation dictating otherwise), and, ultimately, forced Seaman to settle the Target Litigation with Seaman's own money by conditioning its unreasonably low offer to contribute upon a full release by Seaman, including with respect to Zurich's still ongoing breach of its duty to defend Seaman.

2

6.      Everest's conduct towards Seaman was no better.  After Seaman exercised its rights under Ohio law to select certain Zurich policies and, if necessary, C&I excess insurance policies sitting above the Zurich policies to defend and indemnify Seaman in connection with the Target Litigation, Zurich told Seaman that Zurich had secured Everest's agreement to participate in Seaman's defense.

7.      Everest's participation, however, only served to benefit Zurich by further reducing the defense costs paid by Zurich and not providing an additional dime of defense or indemnity for the benefit of Seaman.

8.      Further, Everest's participation only increased the harm and prejudice already inflicted on Seaman by Zurich, as Everest merely parroted Zurich's unreasonable positions on indemnity and injected further delay into the partial payment of defense costs and expenses by refusing to pay even those partial amounts of defense costs that Zurich allocated to and instructed Everest to pay.

9.      Everest made demonstrably false statements as part of its bad faith refusal to pay Seaman's defense costs and expenses.

10.     All told, Zurich and Everest's deliberate actions and – when it served their interests – inaction forced Seaman to spend over $6 million of its own money defending and favorably settling the Target Litigation or risk suffering even greater out-of-pocket losses at the hands of its insurers.

11.     By this course of conduct, Zurich and Everest breached the terms of the insurance policies issued to Seaman and their duties of good faith and fair dealing.

3

12.     Zurich and Everest engaged in bad faith claims handling by, among other things, deliberately and concertedly putting their own interests before Seaman's and ultimately forcing Seaman to settle the Target Litigation with its own money.

13.     Consequently, Seaman brings this action for money damages and declaratory judgment.

## PARTIES, JURISDICTION, AND VENUE

14.     Seaman is a privately held manufacturer of high-performance, innovative fabric solutions, including FiberTite Roofing Systems ("FiberTite"), a coated fabric membrane which provides puncture, chemical, and ponding water resistance.

15.     Seaman is organized under the laws of Ohio with its principal place of business in Wooster, Ohio.

16.     Zurich is an insurance company providing, among other things, commercial general liability ("CGL") insurance.

17.     Upon information and belief, Zurich is organized under the laws of New York with its principal place of business in Illinois.

18.     Everest is an insurance company providing, among other things, CGL insurance.

19.     Upon information and belief, Everest is organized under the laws of Delaware with its principal place of business in New Jersey.

20.     C&I is an insurance company providing, among other things, excess liability insurance.

21.     Upon information and belief, C&I is organized under the laws of New York with its principal place of business in New York.

22.     At this time, C&I is named as a necessary party only.

4

23.     This Court has subject matter jurisdiction over this matter under 28 U.S.C. § 1332(a) because there is complete diversity of citizenship among the parties and the amount in controversy exceeds $75,000, exclusive of interest and costs.

24.     Venue is proper in this Court under 28 U.S.C. § 1391(b)(3) because the Zurich Policies, C&I Policies, and Everest Policies were issued to Seaman in Ohio and Seaman's insurers directed substantial communications related to Seaman's claims to Seaman and its counsel in Ohio.  Thus, a substantial part of the events and omissions giving rise to Seaman's claims occurred in this judicial district.

## FACTUAL ALLEGATIONS

**A.      The relevant insurance policies.**

25.     As relevant to the allegations and evidence adduced in the Target Litigation, Zurich insured Seaman under the following relevant CGL policies:

| Policy Number | Policy Period | Deductible/Self-Insured Retention | Policy Limits |
|---|---|---|---|
| GLO655389601 | 9/30/2010 – 9/30/2011 | $0 | $1 million per occurrence; $2 million general aggregate |
| GLO655389601 | 9/30/2011 – 9/30/2012 | $0 | $1 million per occurrence; $2 million general aggregate |

Collectively, the insurance policies in the above table are referred to herein as the "Zurich Policies" and are attached hereto as **Exhibits A** and **B**, respectively.

5

26. Based on the allegations and evidence adduced in the Target Litigation, Zurich had a duty to defend and indemnify Seaman under the Zurich Policies in connection with the Target Litigation.

27. As relevant to the allegations and evidence adduced in the Target Litigation, C&I insured Seaman under the following relevant excess liability policies:

| Policy Number | Policy Period | Deductible/Self-Insured Retention | Policy Limits |
|---|---|---|---|
| BE065710934 | 9/30/2010 – 9/30/2011 | $10,000 | $20 million per occurrence; $20 million general aggregate |
| BE020739077 | 9/30/2011 – 9/30/2012 | $10,000 | $20 million per occurrence; $20 million general aggregate |

Collectively, the insurance policies in the above table are referred to herein as the "C&I Policies" and sat immediately above the Zurich Policies in Seaman's insurance program for the respective policy years. The C&I Policies are attached hereto as **Exhibits C** and **D**, respectively.

28. Based on the allegations and evidence adduced in the Target Litigation, C&I had a duty to indemnify Seaman under the C&I Policies in connection with the Target Litigation upon the exhaustion of the Zurich Policies.

4833-0327-8335, v.7

29.  As relevant to the allegations and evidence adduced in the Target Litigation, Everest insured Seaman under the following relevant CGL policies:

| Policy Number | Policy Period | Deductible/Self-Insured Retention | Policy Limits |
|---|---|---|---|
| CF8GL00091161 | 9/30/2016 – 9/30/2017 | $25,000 | $1 million per occurrence; $2 million general aggregate |
| RC8GL00087171 | 9/30/2017 – 9/30/2018 | $25,000 | $1 million per occurrence; $2 million general aggregate |
| RC8GL00087181 | 9/30/2018 – 9/30/2019 | $25,000 | $1 million per occurrence; $2 million general aggregate |
| RC8GL00087191 | 9/30/2019 – 9/30/2020 | $25,000 | $1 million per occurrence; $2 million general aggregate |
| RC8GL00087201 | 9/30/2020 – 9/30/2021 | $25,000 | $1 million per occurrence; $2 million general aggregate |

Collectively, the insurance policies in the above table are referred to herein as the "Everest Policies" and are attached hereto as **Exhibits E**, **F**, **G**, **H**, and **I**, respectively.

30.  Based on the allegations and evidence adduced in the Target Litigation, Everest had a duty to defend and indemnify Seaman under the Everest Policies in connection with the Target Litigation.

7

**B.      Seaman's insurers leave Seaman to defend itself in the Target Litigation.**

31.      On December 3, 2018, Seaman was named as the defendant in the Target Litigation, which Target filed as two parallel lawsuits in the United States District Courts for the Northern District of Ohio and the District of Minnesota.

32.      On February 12, 2019, Target filed its First Amended Complaint against Seaman in the Target Litigation.

33.      On February 19, 2019, Seaman – through its insurance broker, Marsh – provided prompt and timely notice of the Target Litigation to its primary and excess insurers, including Zurich, C&I, and Everest.

34.      Target alleged in the Target Litigation that the FiberTite product sold by Seaman to Target was defective and failed to live up to certain warranties and promises purportedly made by Seaman.

35.      The Target Litigation involved a total 158 Target store locations[1] across the county where Target installed the FiberTite purchased from Seaman.

36.      On March 5, 2019, the Honorable Sara Lioi assigned the Target Litigation to the Court's complex track given the depth and breadth of the issues involved.

37.      Despite the broad allegations and multiple theories of damages alleged by Target, none of Seaman's insurers acknowledged a defense obligation, much less a possible indemnity obligation, forcing Seaman to fund its own defense despite paying premiums to maintain continuous CGL insurance coverage throughout the time period relevant in the Target Litigation.

---

[1] Target filed its Supplemental Complaint against Seaman on July 29, 2020, increasing the total number of Target stores at issue to 158.  The vast majority of the stores at issue were identified by Target in the action filed in the Northern District of Ohio.

4833-0327-8335, v.7

38.     In April 2019, Marsh again requested that Seaman's insurers provide a defense in the Target Litigation based on allegations that would give rise to covered claims and/or damages. *See* **Exhibit J**, April 25, 2019 Letter from Marsh to Seaman's Insurers.

39.     Seaman's insurers persisted in their unreasonable refusal to acknowledge a duty to defend Seaman in the Target Litigation.

40.     Seaman and its counsel were required to act swiftly in the Target Litigation to retain experts and consultants and begin inspecting Target stores at issue based on Target's plans to begin removing and replacing the FiberTite product and other roofing system components from certain stores, as Target had done previously without informing Seaman.

41.     These efforts to protect Seaman's interests and avoid further prejudice due to the spoliation of evidence caused Seaman to incur hundreds of thousands of dollars in defense costs and expert expenses in the very early stages of the Target Litigation.

42.     Thus, while a policyholder typically is harmed by an insurer's unreasonable delay in acknowledging a duty to defend, Seaman was acutely harmed by its insurers' inaction due to the complexity of the Target Litigation and the need to incur significant defense costs and expert expenses while Seaman's insurers sat back and did nothing.

43.     In January 2020, Marsh provided Seaman's insurers with evidence of third-party property damage which unambiguously confirmed the insurers' duty to defend Seaman in the Target Litigation and again requested that Seaman's insurers provide Seaman with a full defense. *See* **Exhibit K**, January 3, 2020 Letter from Marsh to Seaman's Insurers (attachments excluded).

44.     In February 2020, Marsh provided additional evidence – based on Target's records – of third-party property damage, again unambiguously confirming the insurers' duty to

defend Seaman in the Target Litigation.  *See* **Exhibit L**, February 3, 2020 Letter from Marsh to Seaman's Insurers (attachments excluded).

45.    Seaman's insurers persisted in their unreasonable refusal to defend Seaman in the Target Litigation while Seaman's defense costs and expert expenses continued to mount and be paid with Seaman's own money.

46.    Later in February 2020, Marsh notified Seaman's insurers that Seaman was exercising its rights under Ohio law to choose the Zurich Policies and, if necessary, the C&I Policies to provide defense and indemnity in connection with the Target Litigation.  Marsh also requested that Zurich reimburse Seaman for the nearly $900,000 in defense costs and expenses paid by Seaman in defending itself in the Target Litigation.  *See* **Exhibit M**, February 27, 2020 Letter from Marsh to Seaman's Insurers.

47.    After another two months of inaction by the insurers and defense costs incurred by Seaman, Zurich agreed to defend Seaman in the Target Litigation and assigned Joanne Scher as the Zurich claim representative in connection with the Target Litigation.

   **C.    Zurich, and later Everest, breach their duty to defend and fail to provide Seaman with a full and complete defense.**

48.    Even after Zurich acknowledged its duty to defend Seaman in the Target Litigation, Zurich failed woefully to fulfill that duty.

49.    Despite repeated demands that Zurich reimburse Seaman for the defense costs and expenses Seaman incurred prior to Zurich's untimely acknowledgement of its defense obligation, Zurich failed to do so and Ms. Scher repeatedly refused to even address the issue, much less confirm Zurich's intent to reimburse Seaman.

50.    With respect to ongoing defense costs and expenses, Zurich unilaterally (and over Seaman's objection) imposed its "panel counsel" rates to drastically reduce the portion of

Seaman's defense costs paid by Zurich.  Zurich's imposition of this rate cap was unreasonable under the circumstances, which included leaving Seaman to defend itself for over a year, the complexity of the Target Litigation, and the eventual conflict of interest between Seaman and Zurich which was created by Zurich and left Zurich without the right to select Seaman's counsel or control Seaman's defense in the Target Litigation.

51.     Zurich further reduced its payment of defense costs based on unreasonable "billing guidelines" and "audits" which Zurich unilaterally imposed without Seaman's consent or agreement.

52.     As a result, Zurich has paid less than 25% of Seaman's defense costs since Zurich tardily acknowledged its defense obligation in April 2020.

53.     In November 2020, Everest notified Seaman that it would begin participating in Seaman's defense in the Target Litigation and assigned Judith Frisina as the Everest claim representative in connection with the Target Litigation.

54.     Everest's participation however, stood to benefit only Zurich and subject Seaman to further prejudice, as Everest and Zurich agreed that Everest's participation would be limited to paying 50% of the already reduced amounts Zurich had been paying.  Thus, Everest's participation saved Zurich money and failed to account for the defense costs and expenses left unpaid by Zurich.

55.     Seaman repeatedly objected to this arrangement.

56.     Seaman later learned from Ms. Scher that Zurich obtained Everest's agreement to participate in Seaman's defense.

57.     Pursuant to this arrangement between Zurich and Everest, Everest paid less than 9% of Seaman's defense costs since Everest agreed with Zurich to participate in Seaman's defense.

58.     By entering into this agreement, both Zurich and Everest chose to advance their own interests to Seaman's detriment and force Seaman to continue to defend itself.

59.     Despite both Zurich and Everest acknowledging a duty to defend Seaman in the Target Litigation, the insurers, without reasonable justification, forced Seaman to spend millions of dollars in its own defense.

**D.     Zurich and Everest fail to indemnify Seaman in its settlement with Target.**

60.     In the days and weeks leading up to the court-ordered mediation in the Target Litigation in January 2021, Seaman's defense counsel requested that Zurich provide settlement authority for such mediation.

61.     Seaman's defense counsel also provided their reasoning and the information forming the basis of the recommendation regarding settlement authority and mediation strategy.

62.     Despite asking for defense counsel's recommendation in this regard, on the eve of mediation, Ms. Scher refused to provide any settlement authority on behalf of Zurich.

63.     In doing so, Ms. Scher asserted in conclusory fashion that "there has been no information provided" to justify Zurich extending settlement authority, making clear that Ms. Scher had failed to review and reasonably consider the information provided at her request by Seaman's counsel in advance of the mediation.

64.     During the course of the two-day mediation, Target reduced its proposed settlement range significantly, and Seaman's defense counsel again implored and recommended that Zurich provide settlement authority to resolve the Target Litigation, which stood to cost

12

Seaman millions of dollars to defend through trial in light of Zurich's and Everest's refusal to provide Seaman with a full and complete defense.

65.    Ms. Scher responded by offering a *de minimis* 5% contribution towards the contemplated settlement range and stating that "we [Zurich] have no indemnity obligation with respect to this matter."

66.    Ms. Frisina failed to provide any settlement authority whatsoever on behalf of Everest.

67.    As a result of Zurich's and Everest's unreasonable failure to provide Seaman with settlement authority, the mediation between Seaman and Target failed.

68.    In the weeks and months that followed, Zurich and Everest maintained the unreasonable position that neither insurer owed an indemnity obligation in connection with the Target Litigation.

69.    The insurers' position in this regard was based on the false assertion that no evidence of third-party property damage had been provided.

70.    In taking this position, Ms. Scher and Ms. Frisina continued to purposely ignore facts and information to support Zurich's and Everest's premature and contrived coverage analysis, which they designed from the outset to disclaim an indemnity obligation otherwise supported by the facts and evidence adduced in the Target Litigation.

71.    It became increasingly clear that Ms. Scher and Ms. Frisina had not reviewed (at least in good faith) information provided by Seaman's counsel and had no intention of reasonably considering information that would be inconsistent with Zurich's and Everest's anticipatory denials of coverage.

4833-0327-8335, v.7

72.     Zurich's and Everest's failure to review and consider the information provided by Seaman and its defense counsel, and Zurich's and Everest's premature and unreasonable denial of coverage, created a conflict of interest between Seaman and its insurers.

73.     Following the failed mediation, Seaman was forced to spend over $500,000 in its own defense as the Target Litigation progressed through fact discovery, expert discovery, and dispositive motion practice while Zurich and Everest continued to pay only a fraction of that amount.

74.     Seaman and Target continued settlement discussions as the Target Litigation progressed.

75.     Zurich and Everest were kept fully apprised of the ongoing settlement discussions between Seaman and Target.

76.     At each turn, Zurich and Everest failed to timely or meaningfully respond to Seaman's requests and recommendations to provide settlement authority to resolve the Target Litigation and no longer subject Seaman to the artificially uninsured damages caused by Zurich's and Everest's failure to provide Seaman with a full and complete defense.

77.     Instead of providing the requested settlement authority to aid in negotiations with Target, Zurich and Everest suggested that Seaman be the primary payor of any settlement, with Zurich's and Everest's contribution – if any – limited to the final dollars necessary to "close the gap" with Target.

78.     Zurich's and Everest's "offer" in this regard had no reasonable justification based on the language of the Zurich Policies and Everest Policies or insurance principles in general.

79.     Zurich's and Everest's delay and posturing towards their insured served only to further prejudice Seaman in its settlement negotiations with Target.

14

80.     Eventually, Seaman's defense counsel negotiated Target's settlement demand below the range contemplated at mediation to an amount which was less than 5% of Target's demand prior to mediation.

81.     Seaman and its defense counsel advised Zurich and Everest that Seaman wished to settle the Target Litigation for the contemplated amount and again implored Zurich and Everest to contribute meaningfully towards that settlement, confirming that Seaman was willing to contribute as well.

82.     Zurich and Everest each responded with the same "offer" to contribute 10% of the contemplated settlement in exchange for a full release of all claims, including Seaman's claim for millions of dollars in unpaid and underpaid defense cost.

83.     Zurich and Everest knew that this "offer" put Seaman in the untenable position to either: 1) self-fund a multi-million dollar settlement in order to preserve its multi-million dollar claim for unpaid defense costs; or 2) reject the Target settlement and subject itself to millions of dollars in additional defense costs that Zurich and Everest would refuse to pay, plus the risk of an adverse verdict substantially exceeding the number at which Target was willing to settle as a result of Seaman's defense counsel's efforts.

84.     Thus, by subjecting Seaman to the threat of incurring additional defense costs (which should have been paid by its insurers but were not), Zurich and Everest forced Seaman to self-fund an objectively reasonable settlement (which should have been paid by its insurers but was not) because the former would eclipse the latter.

85.     Faced with this Hobson's choice, Seaman rejected Zurich's and Everest's "offer," and settled the Target Litigation with its own money.

15

86.     Target expressly represents in the settlement agreement with Seaman that "[t]he damages and losses Target alleges it sustained and incurred include property damage caused by the FiberTite roofing membrane's failure to perform properly and remain watertight resulting in leaks, as well as costs associated with repairing and replacing roofing system components and other property damaged by the leaks."

**E.    Zurich's and Everest's bad faith continues after the Target settlement.**

87.     Zurich's and Everest's prejudicial course of conduct did not end upon the settlement of the Target Litigation.

88.     Seaman retained multiple experts and consultants in connection with the Target Litigation.

89.     Zurich and Everest approved the retention of such experts and consultants and were provided budgets for their work.

90.     Seaman's experts and consultants performed their work within the budgets provided to Zurich and Everest.

91.     Zurich and Everest have failed to pay all outstanding invoices for work performed by Seaman's experts and consultants despite multiple demands for such payment.

92.     Despite Everest's agreement with Zurich to pay 50% of such expenses, Everest has failed to do so.

93.     In an effort to explain Everest's failure to do so, Ms. Frisina advised Seaman's defense counsel that "a substantial reserve increase is in the works to get these and the other outstanding bills paid" despite all invoiced amounts being within budgets provided months prior.

94.     Seaman subsequently learned that this statement by Ms. Frisina was false and merely pretext for Everest's failure to pay pursuant to its agreement with Zurich.

16

95.     Faced with Everest's unwillingness to pay, Seaman demanded that Zurich pay all outstanding balances and seek reimbursement from Everest if necessary.

96.     Despite Seaman selecting the Zurich Policies to provide a full and complete defense in connection with the Target Litigation, Ms. Scher advised Seaman's defense counsel that Zurich will pay no more than its unilaterally imposed "share" of 50% towards expert and consultant expenses.

97.     Zurich's and Everest's conduct in this regard continues to subject Seaman to collection calls and damages Seaman's reputation in the business community.

98.     Thus, Zurich and Everest continue to force Seaman to self-fund defense costs even after the Target Litigation has been settled.

99.     As set forth in Paragraph 29 above, the most recent Everest Policy issued to Seaman was set to expire September 30, 2021.

100.    Upon information and belief, Everest set a reserve for the Target Litigation far in excess of the amounts Everest was paying or intended to pay toward defense or ever intended to pay towards indemnity.  By doing so, Everest misrepresented Seaman's loss history during the renewal period, making Seaman appear to be a worse risk and causing premium quotes to be inflated.

101.    Upon Seaman's refusal to pay such premiums, Everest nonrenewed its policy.

102.    Upon information and belief, Everest's loss run prior to its nonrenewal confirms that Ms. Frisina's representation on September 30, 2021 that "a substantial reserve increase is in the works" is false or misleading.

**COUNT I**
**Breach of Contract**
**(against Zurich and Everest)**

103.    Seaman incorporates by reference the allegations contained in paragraphs 1 through 102 of this Complaint as if fully rewritten here.

104.    The Zurich Policies and Everest Policies are enforceable contracts.

105.    Pursuant to the Zurich Policies and the Everest Policies, Zurich and Everest agreed to pay those sums that the insured – Seaman – became legally obligated to pay as damages because of "property damage" and other loss to which the Zurich Policies and Everest Policies applied.

106.    The Zurich Polices and Everest Policies cover the amounts Seaman was required to pay pursuant to the settlement in the Target Litigation.

107.    By refusing and failing to pay the settlement in the Target Litigation, Zurich and Everest have breached the terms of the Zurich Policies and Everest Policies, respectively.

108.    The Zurich Polices and Everest Policies require Zurich and Everest, respectively, to provide Seaman with a full and complete defense in the Target Litigation.

109.    By refusing and failing to provide Seaman with a full and complete defense in connection with the Target Litigation, Zurich and Everest have breached the terms of the Zurich Policies and Everest Policies, respectively.

110.    Because of these breaches, Seaman suffered damages in excess of $6 million.

18

## COUNT II
### Breach of the Duty of Good Faith and Fair Dealing
### (against Zurich and Everest)

111.     Seaman incorporates by reference the allegations contained in paragraphs 1 through 110 of this Complaint as if fully rewritten here.

112.     Under Ohio law, Zurich and Everest owed their insured, Seaman, a duty of good faith and fair dealing.

113.     Zurich and Everest acted without reasonable justification by, among other things, withholding settlement authority from Seaman before, during, and after the mediation in the Target Litigation; refusing to settle the Target Litigation when such settlement was both advisable and reasonable; forcing Seaman to spend millions of dollars in its own defense while simultaneously acknowledging their duty to defend Seaman; leveraging the insurer-created risk of ongoing unpaid defense costs in an effort to force Seaman to accept an unreasonably low contribution by the insurers towards Seaman's settlement with Target; conditioning any contribution towards Seaman's settlement with Target upon Seaman waiving its right to recover defense costs and expenses to which Seaman is entitled under the Zurich Policies and Everest Policies; making false and misleading statements regarding Zurich's and Everest's review of information related to the Target Litigation in an effort to manufacture coverage defenses not supported by the Zurich Policies or Everest Policies; refusing to timely respond, if at all, to Seaman's requests for settlement authority and fulfillment of their defense obligations, causing prejudice to Seaman in the Target Litigation and in Seaman's business relationships.

114.     Furthermore, Everest acted without reasonable justification when it submitted factually faulty loss runs during policy renewal and subsequently nonrenewing the Everest Policy issued to Seaman.

19

115.    Zurich's and Everest's conduct as described above was a breach of their duty of good faith and fair dealing under the applicable insurance policies and Ohio insurance common law.

116.    Seaman has suffered compensatory damages in excess of $6 million as a result of Zurich's and Everest's bad faith claims handling.

117.    Furthermore, in engaging in the conduct described above, Zurich and Everest acted with actual malice, fraud, and/or insult, exhibiting a conscious disregard for Seaman's rights.  Accordingly, Seaman is entitled to recover extra-contractual damages, including the attorney's fees incurred in this action and punitive damages.

### COUNT III
### Declaratory Judgment
### (against all Defendants)

118.    Seaman incorporates by reference the allegations contained in paragraphs 1 through 116 of this Complaint as if fully rewritten here.

119.    Pursuant to 28 U.S.C. § 2201, Seaman is entitled to a declaration by this Court of the parties' rights and obligations under the insurance policies at issue.

120.    There exists an actual and justiciable controversy over the parties' legal rights, status, and relationships.

121.    Declaratory relief from this Court will terminate this controversy and is necessary to preserve the parties' rights.

122.    This Court has jurisdiction to declare the rights, status, and other legal relations of the parties.

123.    As detailed above, based on the allegations and evidence adduced in the Target Litigation, Zurich, C&I, and Everest had a duty to indemnify Seaman under the Zurich Policies,

C&I Policies, and Everest Policies, respectively, in connection with the Target Litigation. Furthermore, Zurich and Everest had a duty to defend Seaman under the Zurich Policies and Everest Policies, respectively, in connection with the Target Litigation.

124.     None of Zurich, C&I, or Everest have indemnified Seaman in connection with the settlement of the Target Litigation.

125.     Neither Zurich nor Everest has provided Seaman with a full and complete defense in connection with the Target Litigation.

126.     Accordingly, Seaman is entitled to an order declaring that:

    a.  Zurich has a duty to provide Seaman with a full and complete defense in connection with the Target Litigation;

    b.  Zurich has a duty to indemnify Seaman in connection with the settlement of the Target Litigation;

    c.  Everest has a duty to provide Seaman with a full and complete defense in connection with the Target Litigation;

    d.  Everest has a duty to indemnify Seaman in connection with the settlement of the Target Litigation; and

    e.  C&I has a duty to indemnify Seaman under the C&I Policies in connection with the Target Litigation upon the exhaustion of the Zurich Policies.

## SEAMAN'S PRAYER FOR RELIEF

WHEREFORE, Seaman prays this Court for the following relief:

    a)  On Counts I and II, monetary damages in an amount to be proven at trial but which in any event exceed $6 million;

b)  On Count II, extra-contractual damages, including attorney's fees incurred in this insurance coverage dispute and punitive damages;

c)  On Count III, an order declaring that:

    i.  Zurich has a duty to provide Seaman with a full and complete defense in connection with the Target Litigation;

    ii.  Zurich has a duty to indemnify Seaman in connection with the settlement of the Target Litigation;

    iii.  Everest has a duty to provide Seaman with a full and complete defense in connection with the Target Litigation;

    iv.  Everest has a duty to indemnify Seaman in connection with the settlement of the Target Litigation; and

    v.  C&I has a duty to indemnify Seaman under the C&I Policies in connection with the Target Litigation upon the exhaustion of the Zurich Policies.

d)  The reasonable costs and attorneys' fees that Seaman incurs in this action;

e)  Pre-judgment and post-judgment interest at the maximum rates permitted by law; and

f)  Such other or further relief that this Court deems just and proper.

Respectfully submitted,

/s/ *Alexander B. Reich*
ALEXANDER B. REICH (0084869)
MATTHEW A. CHIRICOSTA (0089044)
CALFEE, HALTER & GRISWOLD LLP
The Calfee Building
1405 East Sixth Street
Cleveland, OH 44114-1607
(216) 622-8200 (Phone)
(216) 241-0816 (Fax)
AReich@Calfee.com
MChiricosta@Calfee.com

*Attorneys for Plaintiff, Seaman Corporation*

## JURY DEMAND

Pursuant to Fed. R. Civ. P. 38, Seaman demands a trial by jury of all issues triable of right by jury.

/s/ Alexander B. Reich
ALEXANDER B. REICH (0084869)

*Attorney for Plaintiff, Seaman Corporation*

24