# IN THE UNITED STATES DISTRICT COURT
# FOR THE NORTHERN DISTRICT OF OHIO
# EASTERN DIVISION

| | |
|---|---|
| SEAMAN CORPORATION, | ) CASE NO. 5:21-CV-02158 |
| Plaintiff, | ) |
| | ) JUDGE SARA LIOI |
| v. | ) |
| | ) |
| ZURICH AMERICAN INSURANCE COMPANY, ET AL., | ) **DEFENDANT ZURICH AMERICAN INSURANCE COMPANY'S OPPOSITION TO PLAINTIFF SEAMAN CORPORATION'S MOTION TO DISQUALIFY TUCKER ELLIS LLP AS COUNSEL** |
| Defendants. | ) |
| | ) |

Defendant Zurich American Insurance Company ("Zurich") files this opposition in response to Plaintiff Seaman Corporation's ("Seaman") Motion to Disqualify Tucker Ellis LLP ("Tucker Ellis") as Counsel for Defendant Zurich (the "Motion to Disqualify").

Ohio law is clear: a court may not disqualify a civil litigant's chosen counsel without a violation of the Ohio Rules of Professional Conduct. And, even when there is a violation—unlike here—the Court may disqualify counsel only if the violation prejudices the moving party such that disqualification is absolutely necessary. Seaman fails to satisfy either condition.

First and foremost, Seaman has not been harmed and will not be harmed because Attorney Lindsey Sacher never disclosed any Seaman information and Tucker Ellis appropriately screened her. Although Attorney Sacher represented Seaman at her former firm, Calfee, Halter & Griswold LLP ("Calfee"), her new employment at Tucker Ellis has not and will not prejudice Seaman, much less the public's confidence in the judicial system, as Seaman suggests. Rule 1.10(d) allows for the creation of an ethical screen to sequester lateral attorneys with conflicts from imputing the conflict to their new firm. Here, Tucker Ellis timely screened Attorney Sacher upon the creation of the conflict. She has no access to hard or electronic files relating to the *Seaman v. Zurich* matter,

nor has she divulged any information about Seaman to her colleagues at Tucker Ellis outside of reporting the conflict. And, the lack of any possible risk or harm to Seaman is far outweighed by the prejudice to Zurich in not being able to proceed with the counsel of its choice, especially counsel that it has a long-established relationship with on insurance coverage matters similar to those here.

Moreover, Rule 1.10(c) of the Ohio Rules of Professional Conduct permits a screen unless a lawyer who had substantial responsibility in a matter for a former client becomes associated with a new firm that represents another client *in the same matter*. Attorney Sacher's work for Seaman defending two lawsuits brought by Target Corporation (the "Target Litigations") alleging product defect claims is not the "same matter" as the present insurance coverage dispute and litigation. They are separate lawsuits involving unique legal issues and strategies. Similarly, Attorney Sacher did not have "substantial responsibility" of Seaman's insurance coverage issues while at Calfee. Her work was targeted toward the defense of the product liability lawsuits, and separate Calfee attorneys had responsibility for the insurance coverage issues.

Accordingly, Zurich requests this Court deny Seaman's Motion to Disqualify and allow Tucker Ellis to appear on its behalf as counsel of record.

## I.     FACTUAL BACKGROUND

### A.    Attorney Sacher worked on litigation defense for Seaman at Calfee.

Before joining Tucker Ellis, Attorney Sacher was a partner at Calfee. While there, Attorney Sacher assisted other Calfee lawyers in representing Seaman in two separate lawsuits brought against it by Target Corporation that alleged Seaman's roofing product was defective. Exhibit A, Sacher Decl., ¶ 3. Those two lawsuits were filed in December 2018. According to Seaman's Motion, Seaman promptly notified its insurers, including Zurich, of the lawsuits in February 2019. (ECF No. 12-2, p. 3.) *Over one year later*, in June 2020, Seaman retained Calfee to replace its then

2

counsel. (*Id.*) There was a clear division of responsibilities among the Calfee lawyers who represented Seaman. Ex. A, Sacher Decl., ¶ 4. Attorney Sacher was on the defense team defending the two lawsuits filed by Target Corporation, and Calfee Partner Alex Reich was insurance coverage counsel for Seaman. *Id.*

Although Calfee worked on insurance coverage issues while the Target Litigations were pending, Attorney Sacher did not have responsibility over the separate matter of insurance coverage. *Id.* at ¶ 5. Attorney Sacher's primary focus was on discovery (including depositions) that related to whether Seaman's roofing product was defective and Target's alleged damages. *Id.* at ¶ 7. Even in regards to the non-insurance matters, Attorney Sacher was not lead counsel nor second chair. *Id*. Rather, she was the third attorney (or tied for third) in the chain of responsibility on this side of Calfee's representation. *Id.* Although Attorney Sacher was involved with some communications to the insurance carrier, it was in her role as defense counsel. *Id.* at ¶ 8. She provided status updates to insurance carriers but does not recall drafting a demand for settlement authority, although that is a task that defense counsel is often involved in. *Id.*

  **B. Attorney Sacher lateraled to Tucker Ellis, and Zurich retained Tucker Ellis to defend it.**

On September 1, 2021, Attorney Sacher joined Tucker Ellis. As part of Tucker Ellis's onboarding process, Attorney Sacher submitted a list of former clients she represented and underwent a conflict check against the firm's client base. Exhibit B, Simmons Decl., ¶¶ 2-3. Attorney Sacher's client list included Seaman Corporation, but no conflicts were identified because Seaman had not yet filed suit against Zurich, and there was no conflict to address. *Id.* at ¶¶ 3-4.

About ten weeks later on November 16, 2021, Zurich reached out to Kevin Young of Tucker Ellis, asking if the firm would potentially represent Zurich in a new case brought by

Seaman. Exhibit C, Young Decl., ¶ 4. Attorneys Young and Jennifer Mesko have represented Zurich in many coverage cases in the past several years, are intimately familiar with Zurich, its employees, policies, and practices, and are Zurich's preferred choice of counsel here. Ex. C, Young Decl., ¶¶ 10-11. Attorneys Young and Mesko have significant experience in complex commercial coverage litigations and co-authored Ohio Insurance Coverage (2020), Thomson Reuters. Exhibit D, Mesko Decl., ¶ 6.

Attorney Young ran a conflict check through Tucker Ellis's Conflicts Departments on November 16, 2021, (Ex. C, Young Decl., ¶ 5) and, on November 17, 2021, sent all attorneys at the firm a conflict check email. *Id.* at ¶ 6. Attorney Sacher replied to Attorney Young's email, stating that she was on the defense team in the underlying litigation for Seaman while she was at Calfee. *Id.* Attorney Sacher was walled off that same day. *Id*; Ex. B, Simmons Decl., ¶ 5.

On November 22, 2021, Zurich retained Tucker Ellis to defend it in this matter. Ex. C, Young Decl., ¶ 7. And, on November 29, 2021, a request was made within Tucker Ellis to have Attorney Sacher electronically screened off from the documents and files that would be received in the Seaman lawsuit against Zurich. Ex. B, Simmons Decl., ¶ 7. On December 2, 2021, Tucker Ellis first received the documents from Zurich through a secure link to attorney Mesko. *Id.* These documents were not accessible to Attorney Sacher as they were uploaded to a secured Box folder. *Id.* On December 3, 2021, the IT Department at Tucker Ellis implemented its electronic screen on Tucker Ellis's DeskSite document management system. *Id.* The screen prohibited Attorney Sacher from accessing electronic files relating to the *Seaman v. Zurich* matter that would be added to the Desksite system as the case went forward. *Id.* At no time whatsoever did Attorney Sacher divulge any confidential or privileged information regarding Seaman to her colleagues at Tucker Ellis. Ex. A, Sacher Decl., ¶ 11; Ex. C, Young Decl., ¶ 9; Ex. D, Mesko Decl. ¶ 4.

4

### C. Counsel for Zurich and Seaman met and conferred regarding Seaman's allegations of a conflict.

Seaman, through Calfee, reached out to Tucker Ellis regarding the conflict before it served Zurich with the Complaint. Thomas Simmons, Tucker Ellis's General Counsel, informed Seaman counsel that Attorney Sacher had a conflict, but that she was screened off and that there was absolutely no risk to Seaman's confidential and/or privileged information. Ex. B, Simmons Decl., ¶ 8. Attorney Simmons also explained that Attorney Sacher did not work on the "same matter" at Calfee nor did she maintain responsibility for the insurance coverage issues while at Calfee. *Id.* Although Calfee disagreed with respect to the "same matter" issue, the partners at Calfee repeatedly stated that they had the utmost respect Attorney Sacher's integrity and did not have any concerns that she would disclose Seaman's confidential or privileged information. *Id.* Nevertheless, Seaman filed its Motion to Disqualify Tucker Ellis on January 12, 2022. (ECF No. 12-1.) For the reasons stated below, Seaman's Motion should be denied.

## II. LAW AND ARGUMENT

### A. Legal Standard

Disqualification is a "drastic measure [that] courts should hesitate to impose except when absolutely necessary." *Kala v. Aluminum Smelting & Refining Co., Inc.*, 81 Ohio St.3d 1, 6, 688 N.E.2d 258 (1998) (citation omitted); *Akron v. Carter*, 190 Ohio App.3d 420, 2010-Ohio-5462, 942 N.E.2d 409, ¶ 19 (9th Dist.) (same); *see also In re Valley-Vulcan Mold Co.*, 237 B.R. 322, 337 (6th Cir. 1999), *aff'd*, 5 F. App'x 396 (2001) ("[A] party's choice of counsel is entitled to substantial deference.") (citations omitted). Courts view motions to disqualify with "extreme caution" because the ability to deny one's adversary its choice of counsel "is a potent weapon," which carries significant potential for abuse. *O'Brien v. Brunner*, No. 2:15-cv-2803, 2016 WL 1059683, at *2 (S.D. Ohio Mar. 17, 2016) (citation omitted); *see also Cliffs Sales Co. v. Am. S.S. Co.*, No. 1:07-cv-485, 2007 WL 2907323, at *2 (N.D. Ohio Oct. 4, 2007) (motions to disqualify

viewed with "extreme caution for they can be misused as techniques of harassment") (internal quotations and citations omitted).

Even in the most extreme situations, which are not present here, disqualification is a remedy that is generally frowned upon by courts. For example, "a violation of the Code of Professional Responsibility alone should not result in a disqualification, unless disqualification is found to be absolutely necessary." *Centimark Corp. v. Brown Sprinkler Serv., Inc.*, 85 Ohio App.3d 485, 488–89, 620 N.E.2d 134 (11th Dist.1993); *Cliffs Sales Co.,* 2007 WL 2907323 at 2 ("a violation of the rules of professional responsibility does not automatically necessitate disqualification of an attorney"). Disqualification for an ethical violation is appropriate only "when there is a reasonable possibility that some specifically identifiable impropriety actually occurred, and where the public interest in requiring professional conduct by an attorney outweighs the competing interest of allowing a party to retain counsel of his choice." *SST Castings, Inc. v. Amana Appliances, Inc.*, 250 F. Supp. 2d 863, 865 (S.D. Ohio 2002) (internal quotations and citation omitted). ***"[D]isqualification is such a drastic measure that it should be invoked if, and only if, the [c]ourt is satisfied that real harm is likely to result from failing to invoke it."*** *Barberton Rescue Mission v. Hawthorn*, 9th Dist. Summit No. 21220, 2003-Ohio-1135, ¶ 5 (emphasis added).

Accordingly, "[t]he party seeking disqualification must carry a heavy burden and must meet a high standard of proof before a lawyer is disqualified." *In re Valley-Vulcan Mold Co.*, 237 B.R. at 337 (internal quotations and citations omitted). That party "must identify articulable facts demonstrating a . . . legitimate basis for disqualification." *Prado v. Mazeika*, S.D. Ohio No. 3:16-cv-320, 2016 WL 6947943, at *1 (Ohio Nov. 28, 2016).

6

**B.     Attorney Sacher's conflict is not imputed to Tucker Ellis under Rule 1.10.**

Rule 1.10(c) of the Ohio Rules of Professional Conduct identifies a conflict when a lawyer, who had substantially responsibility over the same matter, moves to a new firm that represents another client with materially adverse interests:

> (c) When a lawyer has had *substantial* responsibility in a matter for a former client and becomes associated with a new *firm*, no lawyer in the new *firm* shall *knowingly* represent, in the same matter, a person whose interests are materially adverse to the interests of the former client.

*See* Ohio R. Prof. Cond. 1.10(c)(emphasis in original). In other words, Rule 1.10(c) is violated only if Attorney Sacher had "substantial responsibility" representing Seaman in the "same matter." Neither requirement is met here.

First, the underlying Target Litigations and this insurance coverage dispute are not the "same matter." They are separate lawsuits, involving separate claims, parties, legal issues, and strategies. Indeed, product defect law and insurance coverage law are not remotely similar. The term "same matter" is not defined by the Ohio Rules of Professional Conduct, but must be something greater than Rule 1.0(n)'s definition of "substantially related matter" that "involves the same transaction or legal dispute or [a matter] in which there is substantial risk that confidential factual information that would normally have been obtained in the prior representation of a client would materially advance the position of another client in a subsequent matter." Ohio R. Prof. Cond. 1.0(n). One Ohio appellate court summarized: "Prof. Cond. R. 1.10(c) mandates disqualification of a firm from representing a party in which an attorney who joins the firm had a substantial responsibility in representing an adverse party in the ***same lawsuit*** regardless of screening and written notice measures." *NexGen Energy Partners, LLC v. Reflecting Blue Techs., Inc.*, 94 N.E.3d 924, 930 (Ohio Ct. App. 2017) (emphasis added).

7

Second, Attorney Sacher did not have "substantial responsibility" over the insurance coverage matter that is the same matter in dispute here. The official comments to Rule 1.10(c) provide guidance as to the meaning of "substantial responsibility:"

> A lawyer who was sole or lead counsel for a former client in a matter had substantial responsibility for the matter. Determining whether a lawyer's role in representing the former client was substantial in other circumstances involves consideration of such factors as the lawyer's level of responsibility in the matter, the duration of the lawyer's participation, the extent to which the lawyer advised or had personal contact with the former client and the former client's personnel, and the extent to which the lawyer was exposed to confidential information of the former client likely to be material in the matter.

Ohio R. Prof. Cond. 1.10, ¶ 5B. Attorney Sacher was third chair on the Target Litigations, dealing primarily with discovery. The coverage issues that arose in the Target Litigations were directed to separate counsel, further insulating Attorney Sacher.

Seaman cites to *NexGen* and *Bourgeois* to support the proposition that attorneys with lesser responsibilities than Attorney Sacher in the Target Litigations imputed their conflicts. (ECF No. 12-1, pp. 10-11.) But the local counsel in *NexGen* formerly represented the defendants and then joined the law firm that was representing the plaintiff in the same lawsuit that was still ongoing. *NexGen*, 94 N.E.3d at 926-27. The local counsel drafted pleadings and discovery, researched case law, attended strategy meetings, and prepared for and attended hearings. *Id.* at 930. Likewise, in *Bourgeois*, the associate who conducted research on potential causes of action that LMI might have against two entities and their employees then moved to a new law firm that represented the individual employees who were eventually sued by LMI. *Litig. Mgt., Inc. v. Bourgeois*, 915 N.E.2d 342, 344-45. As a result, the court found that the associate "was personally involved in the former representation of LMI to an important, material degree" in that her research formed the basis of LMI's legal strategy in the now-filed lawsuit. *Id.* at 348.

The same cannot be said for Attorney Sacher's responsibility in the insurance coverage issues that may have arisen in the Target Litigations. Unlike *NexGen* and *Bourgeois*, she did not have responsibility in the insurance coverage issues. Her role in the Target Litigations was focused on the defense of the underlying suits.

### C. Tucker Ellis adequately screened Attorney Sacher.

Because Attorney Sacher's conflict is not imputed to Tucker Ellis under Rule 1.10(c), it can (and was) properly screened by Rule 1.10(d), which provides:

> (d) In circumstances other than those covered by Rule 1.10(c), when a lawyer becomes associated with a new firm, no lawyer in the new firm shall knowingly represent a person in a matter in which the lawyer is personally disqualified under Rule 1.9 unless both of the following apply:
>
> > (1) the new firm timely screens the personally disqualified lawyer from any participation in the matter and that lawyer is apportioned no part of the fee from that matter;
> >
> > (2) written notice is given as soon as practicable to any affected former client.

Tucker Ellis timely screened Attorney Sacher from any participation in the matter and she has not received any part of the fees related to the same. (ECF No. 12-1, p. 13.) Seaman argues that Tucker Ellis's screen was not timely, but makes several inaccurate assumptions in support. First, Seaman assumes that Tucker Ellis did not erect its screen until *after* it was retained by Zurich. (*Id.*) Not so. Tucker Ellis screened Attorney Sacher as soon as it became aware of the conflict, which occurred during its pre-representation conflict check process. Attorney Sacher was electronically screened from Tucker Ellis's DeskSite management system for this lawsuit and was not provided access to the secure Box folder where the files from Zurich were uploaded for this case so she had no access to the documents in this litigation. . Ex. C, Young Decl., ¶ 8; Ex. B, Simmons Decl. ¶ 7. And, Attorney Sacher never discussed the Seaman matter with any Tucker

9

Ellis attorney—*before or after the screen*—other than reporting the conflict on November 17, 2021. Ex. A, Sacher Decl.¶ 11. Second, Seaman argues that enacting a screen ten weeks after Attorney Sacher joined Tucker Ellis renders it untimely. But, at the time Attorney Sacher joined Tucker Ellis, no conflict existed since Tucker Ellis did not represent Zurich in a matter adverse to Seaman, and there was no reason to foresee that Seaman would sue Zurich (about 6 months after Attorney Sacher's representation of Seaman at Calfee ended) and that Zurich would also retain Tucker Ellis to defend that lawsuit. Most importantly, Attorney Sacher never spoke of the Target Litigations or Seaman insurance coverage issues with any Tucker Ellis attorney or employee, much less divulge privileged or confidential information.

In short, Tucker Ellis implemented screening measures as soon as it received notice of the conflict. Courts have held that this timing is effective. *See Galati v. American Family Ins. Co*., No. CV 16-872272, 2016 WL 9631539, at *7 (Ohio Com.Pl. 2016) (holding screen was timely when erected after receiving a pre-litigation demand letter); *Intelli-Check, Inc. v. Tricom Card Techs*., No. 03 CV 3706(DLI)(ETB), 2008 WL 4682433, at *1 (E.D.N.Y. Oct. 21, 2008) (holding that implementing a screen days after learning of a conflict was a "minimal delay" that did not outweigh the risk of harm to defendants in losing their counsel"); *Chinese Auto. Distributors of Am. LLC v. Bricklin*, No. 07 CIV. 4113 (LLS), 2009 WL 47337, at *4 (S.D.N.Y. Jan. 8, 2009) ("screening measures must have been established from the first moment the conflicted attorney transferred to the firm or, at a minimum, when the firm received actual notice of the conflict") (internal citations omitted). Tucker Ellis also gave notice to Seaman's counsel that it had screened Attorney Sacher on December 6, 2021, just three days after Seaman's counsel contacted Tucker Ellis stating that it was aware of the conflict and within two weeks of Tucker Ellis being retained.

Because the screen was timely, Seaman's concern of "risks" is unfounded. (ECF No. 12-1, pp. 15-16.) Attorney Sacher did not reveal any confidential or privileged information to her

10

Tucker Ellis colleagues between September and November 2021, and the screen was promptly put into place as soon as the conflict arose.

### III.     CONCLUSION

Seaman's theory of disqualification is impracticable, denies clients of their choice of counsel, unfairly restricts lawyer mobility, and stands to delay the administration of justice. Particularly so where, as here, there is no actual threat of harm to Seaman if Tucker Ellis were to represent Zurich with Attorney Sacher behind a screen and where Tucker Ellis has addressed the alleged conflict professionally without disrupting public confidences. *See SST Castings, Inc. v. Amana Appliances, Inc.*, 250 F. Supp. 2d 863, 865 (S.D. Ohio 2002) (Disqualification for an ethical violation is appropriate only "when there is a reasonable possibility that some specifically identifiable impropriety actually occurred, and where the public interest in requiring professional conduct by an attorney outweighs the competing interest of allowing a party to retain counsel of his choice.") (internal quotations and citation omitted). Because disqualification is not necessary, Zurich respectfully requests that Seaman's Motion to Disqualify be denied.

Respectfully submitted,

*/s/ Thomas R. Simmons*
Thomas R. Simmons (0062422)
Savannah M. Fox (097716)
TUCKER ELLIS LLP
950 Main Avenue - Suite 1100
Cleveland, OH 44113-7213
Telephone:     216.592.5000
Facsimile:     216.592.5009
E-mail:     savannah.fox@tuckerellis.com
            thomas.simmons@tuckerellis.com

*Attorneys for Defendant Zurich American Insurance Company*

## CERTIFICATE OF SERVICE

I hereby certify that on February 9, 2022, a copy of the foregoing was filed electronically. Notice of this filing will be sent to all parties by operation of the Court's electronic filing system. Parties may access this filing through the Court's system.

                    Respectfully submitted,

                    */s/ Thomas R. Simmons*

                    *One of the Attorneys for Defendant Zurich American Insurance Company*