IN THE UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF OHIO
EASTERN DIVISION

| | |
|---|---|
| SEAMAN CORPORATION,<br><br>        Plaintiff,<br><br>vs.<br><br>ZURICH AMERICAN INSURANCE COMPANY, et al.,<br><br>        Defendants. | CASE NO. 5:21-CV-02158<br><br>DISTRICT JUDGE DAVID A. RUIZ<br><br>MAGISTRATE JUDGE AMANDA M. KNAPP<br><br>**ORDER** |

        Plaintiff Seaman Corporation ("Seaman") brings this action against defendants Zurich American Insurance Company ("Zurich") and Everest National Insurance Company ("Everest") for alleged breaches of legal duties owed to Seaman with respect to two product defect lawsuits filed by Target Corporation against Seaman ("Target Litigation"). (ECF Doc. 1.) Seaman also brings this action against Zurich, Everest, and Commerce & Industry Insurance Company ("C&I") seeking a declaratory judgment as to the rights and obligations of the parties to this litigation under the insurance policies at issue. (*Id.*) Seaman alleges that Zurich and Everest breached: their obligations to provide a full and complete defense in connection with the Target Litigation; their obligations to cover the amounts that Seaman was required to pay pursuant to the settlement in the Target Litigation; and their duties of good faith and fair dealing under policies of insurance. (*Id.*)

        Seaman filed a motion to disqualify Zurich's counsel. (ECF Doc. 12 ("Motion to Disqualify").) The Motion to Disqualify has been briefed (ECF Docs. 12, 17 & 20) and was referred to the undersigned for resolution (ECF Doc. 33). Seaman filed documentary evidence in

1

support of its Motion to Disqualify for *in camera* review (ECF Docs. 36 & 37) pursuant to the Court's October 11, 2022 Order (ECF Doc. 35).

For the reasons set forth below, the Court finds that attorney Lindsey Sacher has a former client conflict under Ohio Rule of Professional Conduct 1.9 that is imputed to Tucker Ellis under Ohio Rule of Professional Conduct 1.10(c) and cannot be avoided through an ethical screen. Accordingly, the Court finds that disqualification of Tucker Ellis and its attorneys as counsel for Zurich is required in this matter and GRANTS Seaman's Motion to Disqualify (ECF Doc. 12).

## I. Arguments of the Parties

In its motion, Seaman requests that the Court disqualify Zurich's counsel, Kevin Young and Jennifer Mesko, and their law firm Tucker Ellis LLP ("Tucker Ellis"), because a former partner at the law firm representing Seaman in this action, Calfee, Halter & Griswold LLP ("Calfee"), is now employed at Tucker Ellis. (ECF Doc. 12.) Seaman argues that former Calfee attorney Lindsey Sacher ("Attorney Sacher") had substantial responsibility for representing Seaman in the insurance coverage matter when she was a partner at Calfee, causing a former client conflict under Ohio Rule of Professional Conduct 1.9. (*Id*.) Seaman further argues that this conflict is imputed to Tucker Ellis under Ohio Rule of Professional Conduct 1.10(c) and requires the disqualification of Tucker Ellis as counsel for Zurich in this matter, and that the imputed conflict under Rule 1.10(c) cannot be avoided with an ethical screen. (*Id*.)

Zurich opposes the motion, arguing that Attorney Sacher's former client conflict is not imputed to Tucker Ellis under Rule 1.10 because the Target Litigation and this coverage lawsuit are not the "same matter." (ECF Doc. 17.) Zurich further argues that Attorney Sacher did not have "substantial responsibility" over the insurance coverage dispute that is the matter in dispute

in this lawsuit, as required for disqualification under Rule 1.10(c), and that Tucker Ellis created an adequate ethical screen under Ohio Rule of Professional Conduct 1.10(d). (*Id.*)

## II. Factual Background

The Target Litigation was commenced against Seaman in December 2018. (ECF Doc. 1 p. 8, ¶ 31.) Seaman notified Zurich of the Target Litigation in February 2019. (*Id.* at p. 8, ¶ 33.) Seaman alleges in this lawsuit that:

> Following such prompt notice and despite regular status updates from Seaman through its insurance broker, Marsh, demonstrating that Zurich's . . . duty to defend had been triggered by the Target Litigation, Zurich . . . refused to honor their obligations to defend Seaman and left Seaman to fend for itself for over a year, incurring nearly $1 million in defense costs.
>
> Even after Zurich finally acknowledged its defense obligation in April 2020, it refused to provide Seaman with a full and complete defense by failing to pay a substantial portion of Seaman's defense costs, refused to acknowledge any indemnity obligation (despite common sense and the allegations and evidence in the Target Litigation dictating otherwise), and, ultimately, forced Seaman to settle the Target Litigation with Seaman's own money by conditioning its unreasonably low offer to contribute upon a full release by Seaman, including with respect to Zurich's still ongoing breach of its duty to defend Seaman.

(*Id.* at p. 2, ¶¶ 4-5.)

Seaman states that it retained Calfee in June 2020 to serve as litigation and coverage counsel with respect to the Target Litigation. (ECF Doc. 12-1 p. 7.) Attorney Sacher attests that she was employed as an attorney at Calfee from 2011 through July 2021, being promoted from associate to partner during her tenure at Calfee. (ECF Doc. 17-1 p. 2, ¶ 2.) She began representing Seaman in July 2020 in connection with the Target Litigation while an attorney at Calfee as part of the defense team. (*Id.* at ¶ 3.) In doing so, Attorney Sacher asserts that she was not "responsible for insurance coverage disputes with the insurance carriers (including Zurich)." (*Id.* at p. 2-3, ¶ 5.) Instead, she described her role on the Seaman defense team as "third chair or perhaps even tied for third in terms of responsibilities on the defense team." (*Id.* at p. 3, ¶ 7.) A

3

different partner at Calfee "was the insurance coverage counsel for Seaman." (*Id*. at p. 2, ¶ 4; *id*. at p. 3, ¶ 7.) While she participated in conferences with Seaman as defense counsel, she asserts that her "client contact was minimal" and other attorneys on the defense team generally communicated with Seaman. (*Id*. at p. 3, ¶ 7.)

Attorney Sacher agreed that she was involved in "some communications to the insurance carrier . . . in the role of defense counsel," but did not recall drafting a demand for settlement authority to insurance carriers. (ECF Doc. 17-1 p. 3, ¶ 8.) She stated that she may have contributed to a letter that "included [the] topic" of a demand for settlement authority. (*Id*.) The Court's *in camera* review reveals that Attorney Sacher in May 2021 did prepare an initial draft of a demand to Zurich seeking settlement authority and asserting Seaman's position that Zurich had failed to fulfill obligations owed to its insured in connection with the Target Litigation. (ECF Doc. 36-5 pp. 2-5.) The documents reviewed further reveal that she participated in and was privy to discussions leading up to and following the draft demand letter that she authored. (*Id*.; ECF Doc. 36-6.) Prior to May 2021, she was also included in strategy discussions among defense and coverage counsel at Calfee regarding Zurich's coverage and indemnity positions and obligations. (ECF Docs. 36-1 through 36-4.)

Attorney Sacher reports that the Target Litigation settled in May 2021. (ECF Doc. 17-1 p. 4, ¶ 12.) She left Calfee in July 2021 and started working as an attorney at Tucker Ellis on September 1, 2021. (ECF Doc. 17-1 p. 2, ¶ 2; ECF Doc. 17-2 p. 2, ¶ 3.) When Attorney Sacher joined Tucker Ellis, the firm's General Counsel explains that the firm ran conflict checks on clients that she had represented while at Calfee, including Seaman. (ECF Doc. 17-2 pp. 2-3, ¶¶ 3-4.) The results of the conflict check provided on August 4, 2021 did not identify any conflicts. (*Id*. at p. 3, ¶ 4.) Tucker Ellis first identified a potential conflict of interest on November 17,

2021, the day after Zurich contacted Tucker Ellis regarding possibly representing Zurich in this lawsuit. (*Id*. at ¶ 5; ECF Doc. 17-3 pp. 2-3, ¶ 6.) That day, Tucker Ellis screened off Attorney Sacher. (*Id*.) Zurich retained Tucker Ellis on November 22, 2021, with a formal written retention letter dated November 28, 2021. (ECF Doc. 17-2 p. 3, ¶ 6; ECF Doc. 17-2 p. 3, ¶ 7.) The following day, November 29, 2021, Tucker Ellis internally required that Attorney Sacher be screened off electronically from information that would be received in the Seaman litigation against Zurich. (ECF Doc. 17-2 p. 4, ¶ 7.) Zurich electronically sent files to Tucker Ellis relating to the Seaman lawsuit on December 2, 2021. (*Id*.; ECF Doc. 17-3 p. 3, ¶ 8.)

On December 3, 2021, Calfee attorney Alexander Reich, as counsel for Seaman, notified Tucker Ellis "of a conflict of interest created by Tucker Ellis representing Zurich in [the pending] case." (ECF Doc. 12-2 p. 5.) The identified conflict was that Attorney Sacher "had substantial responsibility within the meaning of Ohio Rule of Professional Conduct 1.10(c) for [the] matter while at Calfee representing Seaman Corporation" and the conflict of interest was "imputed to Tucker Ellis and not curable with a screen of one or more lawyers." (*Id*.) Attorney Reich explained that Seaman was not willing to waive the conflict, and he requested that Tucker Ellis decline to represent Zurich in the pending litigation. (*Id*.) On December 6, 2021, Attorney Thomas R. Simmons with Tucker Ellis responded that: Attorney Sacher was screened off when "recently contacted by Zurich about potential representation as soon as [they] learned she was involved in the Seaman Corp./Target litigation"; insurance coverage issues were not her responsibility when representing Seaman in the Target litigation at Calfee; and she was not "sole" or "lead" counsel in the Target litigation. (*Id*.) Counsel for Seaman and Zurich continued to communicate with each other via telephone and email regarding their respective positions as to Seaman's request that Tucker Ellis decline to represent Zurich due to the asserted conflict of

5

interest. (*Id*. at pp. 2-4; ECF Doc. 17-2 p. 4, ¶ 8.) On January 10, 2022, Tucker Ellis notified Calfee that Zurich intended to proceed with Tucker Ellis as its attorney in the pending litigation. (ECF Doc. 12-2 p. 2.) Seaman then filed the pending Motion to Disqualify on January 12, 2022. (ECF Doc. 12.)

### III. Law & Analysis

**A. Standards and Rules Regarding Disqualification of Counsel**

A motion to disqualify is the proper way for a litigant to bring an alleged conflict of interest to a court's attention. *SST Castings, Inc. v. Amana Appliances, Inc.*, 250 F. Supp. 2d 863, 865 (S.D. Ohio 2002); *O'Brien v. Brunner*, No. 2:15-CV-2803, 2016 WL 1059683, at *2 (S.D. Ohio Mar. 17, 2016); *Cliffs Sales Co. v. Am. S.S. Co.*, No. 1:07-CV-485, 2007 WL 2907323, at *2 (N.D. Ohio Oct. 4, 2007). The "moving party bears the burden of establishing the need for disqualification." *Gordon v. Dadante*, No. 1:05-CV-2726, 2009 WL 2732827, at *5 (N.D. Ohio Aug. 26, 2009) (internal citations and quotations omitted). Courts have broad discretion when ruling on motions to disqualify, but that discretion is not unfettered. *SST Castings, Inc.*, 250 F. Supp. 2d at 865; *Cliffs Sales Co.*, 2007 WL 2907323, at *2.; *Gordon*, 2009 WL 2732827, at *5; *Farnhurst, LLC v. City of Macedonia*, No. 5:13-CV-668, 2015 WL 6758223, at *3 (N.D. Ohio Nov. 5, 2015).

The Sixth Circuit "looks to the codified Rules of Professional Conduct for guidance in determining whether an attorney should be disqualified from representing a client based on a conflict of interest." *In re Nat'l Prescription Opiate Litig.*, No. 1:17-MD-2804, 2019 WL 1274555, at *2 (N.D. Ohio Mar. 20, 2019) (citations omitted); *Khan v. Cellco P'ship*, No. 1:10-CV-118, 2011 WL 5042071, at *1 (S.D. Ohio Sept. 8, 2011) (indicating "the Sixth Circuit now relies primarily on the codified Rules of Professional Conduct in determining questions of

lawyer disqualification in a given case") *report and recommendation adopted sub nom. Kahn v. Cellco P'ship*, No. C-1-10-118, 2011 WL 5037225 (S.D. Ohio Oct. 24, 2011); *see also* Local Rule 83.7(a) ("Attorneys admitted to practice in this Court shall be bound by the ethical standards of the Ohio Rules of Professional Conduct adopted by the Supreme Court of the State of Ohio, so far as they are not inconsistent with federal law.")

A violation of the Rules of Professional Conduct may, but does not always, require disqualification. *Compare SST Castings, Inc.*, 250 F. Supp. 2d at 865 ("a violation of the rules of professional ethics does not automatically necessitate disqualification of an attorney") and *Centimark Corp. v. Brown Sprinkler Serv., Inc.*, 85 Ohio App. 3d 485, 488–89, 620 N.E.2d 134, 137 (1993) ("a violation of the Code of Professional Responsibility alone should not result in a disqualification, unless disqualification is found to be absolutely necessary") *with Khan*, 2011 WL 5042071, at *1 ("The use of the term 'shall' in Rule 1.9(a) requires mandatory disqualification when those circumstances defined therein are present.") (quoting *R.E. Kramig Co., Inc. v. Resolute Management, Inc.,* No. 1:07–cv–658, 2009 WL 1395342, at *4 (S.D. Ohio May 18, 2009) (Dlott, C.J.)).

Even though "motions to disqualify may be legitimate and necessary under certain circumstances," courts view them "with extreme caution for they can be misused as techniques of harassment." *SST Castings, Inc.*, 250 F.Supp.2d at 865–66 (internal citations omitted); *Kitchen v. Aristech Chem.*, 769 F.Supp. 254, 256 (S.D. Ohio 1991) (indicating that "the ability to deny one's opponent the services of his chosen counsel is a potent weapon"). Thus, courts are "sensitive to the competing public interests of requiring professional conduct by an attorney and of permitting a party to retain counsel of [its] choice." *O'Brien*, 2016 WL 1059683, at *2; *Farnhurst, LLC*, 2015 WL 6758223, at *3 (same); *see also SST Castings, Inc.*, 250 F.Supp.2d at

866 (explaining "Ohio courts have held that a litigant's right to 'select counsel of choice should be limited only when representation poses a significant risk of a violation of the Canons of the Code of Professional Responsibility'") (quoting *Henry Filters, Inc. v. Peabody Barnes, Inc.*, 82 Ohio App.3d 255, 611 N.E.2d 873, 875 (1992)).

While a court should be sensitive to these competing interests and be on "guard against abuse" through the use of a motion to disqualify, a court "should not weigh the competing issues with hair-splitting nicety but, in the proper exercise of its supervisory power over the members of the bar and with a view of preventing the appearance of impropriety ... resolve all doubts in favor of disqualification." *Gordon*, 2009 WL 2732827, at *6 (internal citations and quotations omitted).

The Ohio Rules of Professional Conduct central to the pending dispute are Rules 1.9 and 1.10. Rule 1.9 pertains to "[t]he duty of a former lawyer to a former client" and Rule 1.10 pertains to "disqualification of law firms." *Khan*, 2011 WL 5042071, at *2-3.

Rule 1.9 states in relevant part:

> (a) Unless the former client gives *informed consent, confirmed in writing*, a lawyer who has formerly represented a client in a matter shall not thereafter represent another person in the same or a *substantially related matter* in which that person's interests are materially adverse to the interests of the former client.

Prof. Cond. R. 1.9(a) (emphasis in original). Zurich does not dispute that Attorney Sacher has a former client conflict as to Seaman under Rule 1.9(a). (ECF Doc. 17 p. 5.) However, Zurich does dispute Seaman's contention that her conflict is imputed to Tucker Ellis and its attorneys under Rule 1.10(c). (*Id*. at pp. 7-9.) Zurich further asserts that any conflict imputed to Tucker Ellis is avoided because Tucker Ellis properly screened Attorney Sacher under Rule 1.10(d). (*Id*. at pp. 9-11.)

The Court therefore turns to the disputed questions: (1) whether Attorney Sacher's former client conflict is imputed to Tucker Ellis and its attorneys under Rule 1.10(c); and (2) whether Tucker Ellis and its attorneys can avoid any imputed conflict under Rule 1.10(d).

**A.** **Whether Attorney Sacher's Conflict is Imputed to Tucker Ellis and its Attorneys Under Rule 1.10(c)**

Rule 1.10 states in relevant part:

> (c) When a lawyer has had *substantial* responsibility in a matter for a former client and becomes associated with a new *firm*, no lawyer in the new *firm* shall *knowingly* represent, in the same matter, a person whose interests are materially adverse to the interests of the former client.

Prof. Cond. Rule 1.10(c) (italics in original; underline added). The disputed issues with respect to the application of Rule 1.10(c) are: (1) whether Attorney Sacher represented Seaman in a matter that is the "same matter" as the matter involved in this litigation; and (2) whether Attorney Sacher had "substantial responsibility" in that matter. The Court addresses each of these below.

**1. Whether Attorney Sacher Represented Seaman in a Matter that is the "Same Matter" as the Matter Involved in the Present Litigation**

This litigation is based on Seaman's claim that Zurich failed to provide a complete defense and indemnification for the claims previously raised against Seaman in the Target Litigation, in contravention of the applicable insurance policies. (ECF Doc. 1.) Seaman argues that Attorney Sacher represented it in the "same matter" because: "As a Calfee partner, she was an integral member of the team of Calfee lawyers who holistically represented Seaman in connection with all aspects of the potential liabilities arising from the allegedly defective roofing membranes Seaman sold to Target — including the disputed insurance coverage issues." (ECF Doc. 12-1 p. 13.) Zurich counters that the Target Litigation and the present insurance coverage

9

dispute litigation are not the "same matter" because "[t]hey are separate lawsuits, involving separate claims, parties, legal issues, and strategies." (ECF Doc. 17 p. 7.)

Ohio Rule of Professional Conduct 1.10 does not define "same matter." Ohio Rule of Professional Conduct 1.0 does define a "substantially related matter" as "one that involves the same transaction or legal dispute or one in which there is a substantial risk that confidential factual information that would normally have been obtained in the prior representation of a client would materially advance the position of another client in a subsequent matter." Prof. Cond. Rule 1.0(n).

Without a clear definition of "same matter," the Court turns to the circumstances of this case to determine whether Attorney Sacher provided representation to Seaman in the "same matter" at issue in the present lawsuit. *See e.g.*, *United States v. Villaspring Health Care Ctr., Inc.*, No. CIV.A. 3:11-43-DCR, 2011 WL 5330790, at *4 (E.D. Ky. Nov. 7, 2011) (indicating that "a matter 'may continue in another form'" and a court should consider "the matters' substance, rather than their forms").

Zurich contends that this action cannot be the "same matter" because it is not the same lawsuit as the Target Litigation. (ECF Doc. 17 p. 7.) Rule 1.10(c) does require "disqualification of a firm from representing a party in which an attorney who joins the firm had a substantial responsibility in representing an adverse party in the <u>same lawsuit</u> regardless of screening and written notice measures." *NexGen Energy Partners, LLC v. Reflecting Blue Techs., Inc.*, 2017-Ohio-5855, ¶ 46, 94 N.E.3d 924, 930 (Ohio App. Ct. 2017) (emphasis added). However, the language of Rule 1.10(c) does not limit its application to instances where the representation occurs in the same "lawsuit." Thus, the fact that the present litigation is not the same lawsuit as the underlying Target Litigation does not alone establish that it is not the "same matter."

The evidence before this Court demonstrates that Calfee attorneys, including Attorney Sacher, represented Seaman in the defense of <u>both</u> the claims asserted against it by Target <u>and</u> Seaman's dispute with Zurich regarding the defense and indemnification obligations Seaman argued Zurich failed to meet.  Specifically, the evidence demonstrates Attorney Sacher began representing Seaman in July 2020 in connection with the Target Litigation as part of the defense team.  (ECF Doc. 17-1 p. 2, ¶ 3.)  She asserted that she was not "responsible for insurance coverage disputes with the insurance carriers (including Zurich)" while at Calfee (*id*. at pp. 2-3, ¶ 5), and that a different partner at Calfee "was the insurance coverage counsel for Seaman" (*id*. at p. 2, ¶ 4; *id*. at p. 3, ¶ 7).  She also asserted that she did not recall drafting a demand letter to insurance carriers in connection with the Target litigation.  (*Id.* at p. 3, ¶ 8.)  However, she did recall "the issue of demanding settlement authority and [that] [she] may have contributed to a letter including that topic."  (*Id*.)  In fact, the evidence reviewed *in camera* demonstrates that she prepared an initial draft of a demand to Zurich in May 2021 which sought settlement authority and asserted Seaman's position that Zurich had failed to fulfill obligations owed to its insured in connection with the Target Litigation.  (ECF Doc. 36-5 pp. 2-5.)  The evidence further reflects that she participated in and was privy to internal planning discussions relating to, leading up to, and following the demand letter for which she authored the first draft.  (*Id*.; ECF Doc. 36-6.)

As explained in the official comments to Prof. Cond. Rule 1.11(e), which relates to conflicts of interest for government officers and employees: "In determining whether two particular matters are the same, the lawyer should consider the extent to which the matters involve the same basic facts, the same or related parties, and the time elapsed."  Prof. Cond. Rule 1.11(e), Comment 10; *see also United States v. Villaspring Health Care Ctr., Inc.*, No. CIV.A. 3:11-43-DCR, 2011 WL 5330790, at *4 (E.D. Ky. Nov. 7, 2011) (explaining that when

determining whether two matters are the same under Kentucky Rule 1.11, the court should "consider the extent to which the matters involve the same basic facts, the same or related parties, and the time elapsed").

The commentary to Rule 1.11 is instructive and further guides this Court when evaluating whether Attorney Sacher previously represented Seaman in the "same matter" as contemplated in Rule 1.10(c). While Attorney Sacher's representation may have been largely focused on defense strategy in the Target Litigation, the evidence reflects that her representation of Seaman at Calfee also involved the same basic facts (insurance coverage dispute) and the same or related parties (Seaman and Zurich).

The Court finds that the Target Litigation and Attorney Sacher's representation relating thereto was not limited to defense of the Target lawsuits. She also provided legal representation to Seaman on the insurance coverage dispute with Zurich during the pendency of that action, including direct involvement in drafting a demand letter to Zurich in May 2021. The insurance coverage dispute between Seaman and Zurich continued after the conclusion of the Target Litigation, and is the matter directly in dispute in this lawsuit. Accordingly, the Court concludes that Attorney Sacher represented Seaman in the "same matter" that is in dispute here. The Court therefore turns to whether Attorney Sacher had "substantial responsibility" in the matter.

**2. Whether Attorney Sacher had Substantial Responsibility in the Matter**

With respect to the question of "substantial responsibility," Seaman contends that Attorney Sacher's role as counsel for Seaman was not limited to litigation defense, and that she had "substantial responsibility" in the coverage matter. (ECF Doc. 12-1 pp. 12-15; ECF Doc. 20 pp. 4-8.) Seaman argues that Attorney Sacher's "partner-level responsibilities and activities," her "intimate access to confidential information about Seaman's coverage strategies," and her

12

direct participation in insurance coverage issues discussed in May 2021 demonstrate she had "substantial responsibility" in the matter. (*Id*.) Zurich argues that: Attorney Sacher was "third chair on the Target Litigations, dealing primarily with discovery"; the "coverage issues that arose in the Target Litigations were directed to separate counsel"; and "she did not have responsibility in the insurance coverage issues." (ECF Doc. 17 pp. 8-9.)

The official comments to Rule 1.10 provide guidance on the issue of what constitutes "substantial responsibility." Comment 5(B) states:

> A lawyer who was sole or lead counsel for a former client in a matter had substantial responsibility for the matter. Determining whether a lawyer's role in representing the former client was substantial in other circumstances involves consideration of <u>such factors as the lawyer's level of responsibility in the matter, the duration of the lawyer's participation, the extent to which the lawyer advised or had personal contact with the former client and the former client's personnel, and the extent to which the lawyer was exposed to confidential information of the former client likely to be material in the matter.</u>

Prof. Cond. R. 1.10, Comment 5(B) (emphasis added). Although Comment 5 explicitly states that an attorney who is lead counsel has "substantial responsibility" for the matter, an attorney who is not lead counsel may also have "substantial responsibility" in a matter. *Litig. Mgt., Inc. v. Bourgeois*, 2009-Ohio-2266, ¶ 26, 182 Ohio App. 3d 742, 750, 915 N.E.2d 342, 348 (Ohio App. Ct. 2009). In *Bourgeois*, the court concluded that an associate attorney who had been provided with confidential information and who had researched and analyzed potential claims that lead to advice given to the client and legal strategy had "substantial responsibility" in the matter even though she did not have contact with the client, the matter was a relatively short engagement, and she was unable to recall the details of the former matter. *Id.*

Here, the Court finds that the evidence demonstrates that Attorney Sacher had "substantial responsibility" in the insurance coverage issues as counsel for Seaman even though she was not sole or lead counsel. Although Attorney Sacher described her contact with the client

13

as "minimal" and occurring in connection with her role as defense counsel, she did participate in conferences with Seaman. (ECF Doc. 17-1 p. 3, ¶ 7.) She was also involved in "some communications to the insurance carrier . . . in the role of defense counsel." (*Id*. at ¶ 8.) Further, although she does not recall "drafting a demand for settlement authority to the insurance carriers as asserted in Seaman's brief," she recalls "the issue of demanding settlement authority" and that she "may have contributed to a letter that included that topic." (ECF Doc. 17-1 p. 3, ¶ 8.) Indeed, the evidence provided *in camera* indicates that she prepared the first draft of a demand to Zurich seeking settlement authority and asserting that Zurich had failed to fulfill obligations owed to its insured in connection with the Target Litigation. (ECF Doc. 36-5 pp. 2-5). Her draft demand letter was specific and detailed. (*Id*.) Although she also states she could not "articulate the details of Seaman's insurance coverage positions," (ECF Doc. 17-1 p. 4, ¶ 9), the evidence reflects that she participated in and was privy to strategy discussions leading up to and following the draft demand letter that she authored. (ECF Doc. 36-5 pp. 2-5; ECF Doc. 36-6). She was also included in confidential discussions among defense and coverage counsel at Calfee regarding Zurich's positions and obligations with regard to coverage and indemnity. (ECF Docs. 36-1 through 36-4.)

      The Court finds that Attorney Sacher had "substantial responsibility" in the insurance coverage matter even though she was not lead or sole counsel for the litigation defense or coverage issues. The evidence demonstrates she substantially participated in the coverage matter, even though she cannot specifically recall drafting the demand letter or the substance of the internal discussions regarding the coverage dispute. *See e.g.*, *Litig. Mgt., Inc.* 915 N.E.2d at 348 (finding attorney has "substantial responsibility" even though attorney was not primary counsel and could not recall details of the former matter or confidences disclosed); *U.S. ex rel.*

*Bumbury v. Med-Care Diabetic & Med. Supplies, Inc.*, 101 F. Supp. 3d 1268, 1278 (S.D. Fla.), *aff'd,* 101 F. Supp. 3d 1280 (S.D. Fla. 2015) (explaining that "[m]erely contending that [one] has no recollection of receiving information is insufficient to oppose evidence to the contrary").

For the reasons explained above, the Court concludes that Attorney Sacher had "substantial responsibility" in the "same matter" that is at issue in this case. Thus, the Court finds that Attorney Sacher's conflict is imputed to Tucker Ellis and its attorneys under Rule 1.10(c). The Court accordingly turns then to the question of whether Tucker Ellis and its attorneys can avoid the imputed conflict.

**B.     Whether Tucker Ellis and its Attorneys Can Avoid Imputed Conflict Under Rule 1.10(d)**

Professional Conduct Rule 1.10(d) provides an avenue for law firms and their attorneys to avoid imputed conflicts. It provides:

> (d) In circumstances <u>other than those covered by Rule 1.10(c)</u>, when a lawyer becomes associated with a new *firm*, no lawyer in the new *firm* shall *knowingly* represent a person in a matter in which the lawyer is personally disqualified under Rule 1.9 unless both of the following apply:
>
> (1) the new *firm* timely *screens* the personally disqualified lawyer from any participation in the matter and that lawyer is apportioned no part of the fee from that matter;
>
> (2) *written* notice is given as soon as practicable to any affected former client.

Prof. Cond. R. 1.10(d) (italics in original; underline added).

Arguing that Attorney Sacher's conflict is not imputed to Tucker Ellis and its attorneys under Rule 1.10(c), Zurich contends that disqualification is not required because Tucker Ellis can and did properly screen Attorney Sacher under Rule 1.10(d). (ECF Doc. 17 pp. 9-11.) It argues that: (1) Tucker Ellis timely screened Attorney Sacher from any participation in the matter and

15

she has not received fees for the matter; and (2) Tucker Ellis provided notice to Seaman's counsel of the screen three days after Seaman's counsel contacted Tucker Ellis regarding the conflict. (*Id*. at pp. 9-10.)

On its face, Rule 1.10(d) does not apply if disqualification occurs under Rule 1.10(c). Because the Court has concluded that disqualification is required under Rule 1.10(c), the imputed conflict cannot be avoided under Rule 1.10(d).

### IV. Conclusion

For the reasons set forth above, the Court **GRANTS** Seaman's Motion to Disqualify Tucker Ellis and its attorneys from representing Zurich in this matter (ECF Doc. 12.)

Dated: November 28, 2022

*/s/ Amanda M. Knapp*
AMANDA M. KNAPP
UNITED STATES MAGISTRATE JUDGE