IN THE UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF OHIO
EASTERN DIVISION

| | |
|---|---|
| SEAMAN CORPORATION,<br><br>        Plaintiff,<br><br>vs.<br><br>ZURICH AMERICAN INSURANCE COMPANY, et al.,<br><br>        Defendants. | CASE NO. 5:21-CV-02158<br><br>DISTRICT JUDGE DAVID A. RUIZ<br><br>MAGISTRATE JUDGE AMANDA M. KNAPP<br><br>**ORDER** |

Plaintiff Seaman Corporation ("Seaman") has raised a discovery dispute regarding its request for production of certain documents by Defendant Everest National Insurance Company ("Everest") and for in-camera review of other documents. (ECF Doc. 77.) The matter has been briefed by the parties (ECF Docs. 77, 78, 79, 80), and was referred to the undersigned for determination (*see* Non-Document Order on 2/8/2024). For the reasons set forth below, the undersigned **DENIES** Seaman's requests to compel production and for in-camera review.

        **I.**        **Background**

Seaman filed the present action against three insurance companies—Everest, Zurich American Insurance Company ("Zurich"), and Commerce & Industry Insurance Company ("CIC")—regarding its defense of two product defect lawsuits filed against it by Target Corporation ("Target Litigation"). (ECF Doc. 1.) In its Complaint, Seaman states claims for: (1) breach of contract (against Everest and Zurich); (2) breach of the duty of good faith and fair dealing (against Everest and Zurich); and (3) declaratory judgment (against all defendants) as to the rights and obligations of the parties under the insurance policies at issue. (*Id*. at pp. 18-20.)

1

The present dispute was brought before the Court on January 18, 2024, when Seaman filed a *Letter Requesting Discovery Telephone Conference Pursuant to Local Rule 37.1*, asking the Court to compel discovery and/or conduct in-camera review of 343 documents that had been withheld by Everest. (ECF Doc. 77.) Seaman represented that the parties participated in "good-faith written and videoconference efforts to resolve this dispute" but were nevertheless "at an impasse." (*Id.* at 1.) The Court ordered Everest to respond to Seaman's letter. (*See* Non-Document Order on 1/23/2024.) Everest responded (ECF Doc. 78), Seaman replied to the response (ECF Doc. 79), and Everest responded to the reply (ECF Doc. 80).

The matter was referred to the undersigned for determination. (*See* Non-Document Order on 2/8/2024.) The undersigned finds the parties' letter briefs, with the provided exhibits, sufficient for resolution of the present dispute. (ECF Docs. 77 (with 77-1 through 77-4), 78 (with 78-1 through 78-10), 79 (with 79-1 through 79-4), 80 (with 80-1 through 80-8).) Accordingly, the matter is ripe for review.

## II. Analysis

Seaman first asks the Court to "order Everest to produce the documents it improperly withheld solely on attorney-client privilege grounds," referring to 191 specific documents listed in Everest's privilege log. (ECF Doc. 77, pp. 1-2 (citing documents listed in ECF Doc. 77-2).) Seamon next asks the Court to "order Everest to submit for an in camera inspection the documents it withheld solely or partly on work product grounds to determine whether they are work product or discoverable," referring to 152 additional documents listed in the privilege log. (ECF Doc. 77, pp. 1-2 (citing documents listed in ECF Doc. 77-3).) Notably, all but ten of the "work product" documents for which Seaman seeks in-camera review are also listed on Everest's privilege log as protected by the attorney-client privilege. (*See* ECF Doc. 77-3.)

2

The undersigned will first address Seaman's request for production of the attorney-client privileged materials, before turning to its request for in-camera review of attorney work product.

### A. Whether Seaman is Entitled to Production of Attorney-Client Privileged Materials Under the *Boone* Exception

Although Seaman only explicitly requests the production of the 191 documents Everest "improperly withheld *solely* on attorney-client privilege grounds" (ECF Doc. 77, p. 2 (emphasis added)), the undersigned finds it appropriate to also consider in its analysis the 142 documents that Everest designated as protected by *both* the attorney-client privilege and the attorney work product doctrine (ECF Doc. 77-3), adding up to a total of 333 documents being withheld by Everest based solely or in part on attorney-client privilege (the "AC Documents").

#### 1. Arguments of the Parties

Seaman explains that it has asserted "a bad faith claim against Everest" in this insurance coverage action, and argues: "Ohio law provides that insurance policyholders such as Seaman are entitled to discovery of attorney-client privileged materials 'that may cast light on whether the insurer acted in bad faith'—*i.e.*, materials 'related to the issue of coverage that were created prior to the denial of coverage.'" (ECF Doc. 77, p. 1 (quoting *Boone v. Vanliner*, 91 Ohio.St.3d 209, 214 (2001).) Everest agrees that *Boone* states the applicable standard. (ECF Doc. 78, p. 3.)

However, Everest asserts that the *Boone* exception does not apply to the AC Documents because all those documents were created "long after Everest denied coverage – nearly one year after Everest's denial letter was issued" on May 24, 2019. (ECF Doc. 78, p. 3.) Seaman disagrees, asserting that the alleged May 24, 2019 denial letter was not received by Seaman or produced in discovery, and that the first operative substantive coverage decision from Everest was instead a November 24, 2020 letter in which Everest agreed to defend Seaman under a reservation of rights. (ECF Doc. 77, p. 3; ECF Doc. 79, p. 1.)

3

2.   **Evidence Relevant to Timing of Denial of Coverage**

Since there is no dispute that Seaman's entitlement to production of the AC Documents under the *Boone* exception is dependent on a finding that the AC Documents were "created prior to the denial of coverage," *Boone*, 91 Ohio.St.3d at 214, the evidence supplied and discussed by the parties in connection with this question is summarized below.  Neither party has specifically disputed the authenticity of the relevant records, except as noted below.

Seaman's broker served its First Report of Loss on Everest's third-party administrator on or about February 11, 2019.  (ECF Doc. 78, p. 1; ECF Doc. 78-1.)  Internal claims notes for Everest's third-party administrator indicate that the following actions were taken thereafter:

- March 29, 2019: "Attached for your review and consideration is a draft coverage declination. . . . Please advise if you agree with the proposed letter/coverage position." (ECF Doc. 78-2, pp. 8-9);

- April 4, 2019: "Draft coverage position letter was submitted to Everest on 3/29. . . ." (*id.* at p. 8);

- May 16, 2019: "Received Everest approval to issue coverage position letter/declination." (*id.* at p. 5);

- May 24, 2019: "Ok to issue letter" (*id.* at p. 2);

- May 24, 2019: "coverage declination approved by Everest. it will be mailed today." (*id.*);

- June 17, 2019: "Diary review. Coverage declination issued 5/24. No rebuttal/response. Closing file." (*id.* at p. 1).

Everest has also supplied an unsigned letter dated May 24, 2019, from Everest's third-party administrator to Seaman Corporation, which states that Everest "ha[s] determined there is no coverage under the Everest policies for these claims as presented." (ECF Doc. 78-6, p. 1.) Seaman contests the authenticity of the unsigned letter, arguing it is "(i) in draft form, as evidenced by the lack of signature; and (ii) has not been located in Seaman's or its broker Marsh's files."  (ECF Doc. 79, p. 1.)  Seaman also notes that "Everest did not produce the May

4

2019 letter in prior discovery," and that "[t]he first time Everest 'produced' this letter was by attaching Exhibit F to its Rule 37.1 letter." (*Id.*)  Everest responds that "[f]act discovery has not closed in this case and the parties' document productions have been ongoing." (ECF Doc. 80, p. 1.)  Everest also supplies a declaration from a representative of its third-party administrator, averring that the attached (unsigned) letter is a true and accurate copy of the May 24, 2019 denial letter, which was kept and maintained in the normal and ordinary course of business in the applicable claims file.  (ECF Doc. 80-7.)

In a January 3, 2020 letter from Marsh USA Inc. ("Marsh") to Seaman's five primary insurance carriers—including Everest—and its six umbrella carriers, Marsh requested on behalf of Seaman that the insurance carriers "update [their] coverage position[s]" based on specified information.  (ECF Doc. 78-7.)  In a February 3, 2020 letter to the same insurance carriers—including Everest—Marsh requested on behalf of Seaman that the insurance carriers consider new data and "update [their] coverage positions based on it, in particular [their] duty to defend Seaman against the Target lawsuits."  (ECF Doc. 80-2.)

Authenticated electronic claims file notes for Everest's third-party administrator further reflect that Everest's claims handler documented a telephone call with a Marsh representative on February 13, 2020, as follows: "I just spoke to Brian at Marsh. They want us to reconsider the denial sent on 5/24 last year. File was closed on 6/17/19."  (ECF Doc. 80-7, pp. 1, 3.)

An email dated May 12, 2020, indicates that a representative of co-defendant Zurich contacted Everest's claims representative on that date, stating: "we are looking to Seaman's other carriers to participate in a pro rata allocation for defense costs in this matter" and "[p]er our telephone call, it is my understanding that you are discussing this matter with your coverage counsel."  (ECF Doc. 78-4, p. 2.)  In a July 1, 2020 follow-up email, Zurich's representative

proposed to provide contact information for Zurich's coverage counsel so that coverage counsel for both Zurich and Everest could directly discuss the matter. (*Id.* at p. 1.)

In a letter dated November 24, 2020, Everest stated that it was providing "Everest's response and current coverage position" in response to a May 19, 2020 letter from Seaman. (ECF Doc. 78-8, p. 1.) Everest agreed therein to participate in Seaman's defense under a reservation of rights, but specified: "Everest does not waive any prior positions taken with regard to these claims and fully and completely reserves its rights to continue to assert all prior coverage positions, whether or not specifically incorporated herein." (*Id.* at p. 4.)

In a January 29, 2021 letter to four insurers—including Everest—Zurich noted that Everest had acknowledged a duty to defend in the relevant lawsuits and was working on terms for a cost-sharing arrangement with Zurich for defense costs. (ECF Doc. 78-5.) Zurich further indicated that it was preparing to file a declaratory judgment action against the other insurers if they did not also agree to a cost sharing arrangement. (*Id.*)

### 3. Legal Standard Governing Production of Attorney-Client Privileged Material in Bad Faith Claims Relating to Insurance Coverage

In *Boone*, the Ohio Supreme Court addressed the question: "whether, in an action alleging bad faith denial of insurance coverage, the insured is entitled to obtain, through discovery, claims file documents containing attorney-client communications and work product that may cast light on whether the denial was made in bad faith." *Boone*, 91 Ohio St. 3d at 211–12. The court concluded as follows:

> [W]e hold that in an action alleging bad faith denial of insurance coverage, the insured is entitled to discover claims file materials containing attorney-client communications *related to the issue of coverage* that were *created prior to the denial of coverage*. At that stage of the claims handling, the claims file materials will not contain work product, i.e., things prepared in anticipation of litigation, because at that point it has not yet been determined whether coverage exists.

6

*Id.* at 213–14 (emphasis added). The question at the heart of the present discovery dispute is whether the attorney-client privileged materials identified by Seaman were "created prior to the denial of coverage." *Id.* at 214.

In cases where there is no formal, written denial of an insurance claim, courts in this district have held that "it is reasonable for a court to *construct* a date of denial for purposes of determining the scope of the *Boone* exception." *C.B. Fleet Co. v. Colony Specialty Ins. Co.*, No. 1:11-CV-0375, 2012 WL 9514721, at *5 (N.D. Ohio Dec. 21, 2012) (emphasis in original) (citing *Chubb Custom Ins. Co. v. Grange Mut. Cas. Co.*, 2012 WL 1340369 at *4 (S.D. Ohio April 17, 2012) and *Scotts Co. v. Liberty Mut. Ins. Co.*, 2007 WL 1500899 at *4 (S.D. Ohio May 18, 2007)); *see Arrowood Indem. Co. The Lubrizol Corp. v. United States Fire Ins. Co.,* No. 1:10 CV 2871, 2016 WL 6634747, at *5 (N.D. Ohio Feb. 22, 2016) ("In cases where there was no formal, written denial of claim, *Boone* sets forth a limited doctrine, which allows courts to 'construct a date of denial *for purposes of determining the scope of the Boone exception*.'") (emphasis in original) (quoting *Chubb Custom Ins. Co.*, 2012 WL 1340369 at *4 (citing *In re Prof'ls Direct Ins.*, 578 F.3d 432, 442 (6th Cir. 2009))); *see also In re Prof'ls Direct Ins.*, 578 F.3d at 441-42 (upholding district court's determination of a "constructive denial date" under *Boone*, finding this application of *Boone* was not "clearly erroneous as a matter of law").

  4.  **The *Boone* Exception Does Not Apply Because the AC Documents Were Created After Everest's Denial of Coverage**

This discovery dispute hinges on a determination of when Everest denied coverage for purposes of applying the *Boone* exception. Seaman asks the Court to compel the production of attorney-client privileged materials created between March 11, 2020, and October 21, 2021. (ECF Doc. 77-2.) Seaman also seeks relief as to documents designated as both attorney-client privileged materials and attorney work product, which were created between April 7, 2020, and

7

October 21, 2021. (ECF Doc. 77-3.) Everest contends that the *Boone* exception does not apply to any of the materials in question because it denied coverage on May 24, 2019. For the reasons set forth below, the undersigned finds that May 24, 2019, is the applicable coverage denial date.

Unlike other cases requiring a "constructive" determination of the coverage denial date, the evidence in this case includes a formal, written denial of the insurance claims. However, the impact of that denial letter has been brought into question because: (1) Seaman says it did not receive the letter; (2) Everest did not produce a copy of the letter in its document production prior to the present dispute; (3) the copy of the letter provided is unsigned; and (4) no evidence was presented to prove that the letter was actually mailed to Seaman. While some of Seaman's evidentiary concerns are legitimate, the weight of the evidence nevertheless requires a finding that Everest denied Seaman's claims for purposes of a *Boone* analysis well before March 11, 2020—the creation date of the earliest document sought—and specifically on May 24, 2019.

The documentary evidence convincingly demonstrates that Everest's internal decision-making process resulted in a decision to deny coverage and issue a coverage denial letter as of May 24, 2019. (*See* ECF Doc. 78-2.) Authenticated evidence from Everest's claims file further demonstrates that a coverage denial letter was prepared and dated May 24, 2019. (*See* ECF Doc. 80-7.) Thereafter, there is no dispute that Everest, along with other insurance carriers, received letters from Marsh on behalf of Seaman in January and February 2020 asking it to "update [its] coverage position," particularly as to the duty to defend. (ECF Docs. 78-7, 80-2.) Everest's claims file then documents a call with a Marsh representative in February 2020, asking Everest "to reconsider the denial sent on 5/24 last year." (ECF Doc. 80-7, pp. 1, 3.) This evidence paints a clear picture of a coverage denial decision made by Everest and conveyed to Seaman well before any of the privileged documents are issue were created.

Seaman's arguments regarding the authentication of the denial letter—that the May 2019 coverage denial letter was not found in Seaman's or Marsh's files, was not initially produced by Everest, was not produced in a final signed version, and was not proven to have been mailed or received (ECF Doc. 77, p. 3; ECF Doc. 79, p. 1)—do not alter this analysis. As set forth above, the existing documentary record sufficiently demonstrates that Everest made the decision to decline coverage and conveyed that decision to Seaman.

Seaman's argument that Everest's November 24, 2020 letter agreeing to defend under a reservation of rights was Everest's "first substantive coverage position letter" (ECF Doc. 77, p. 3; ECF Doc. 79, p. 1) also does not change the analysis. The fact that this letter "does not specifically cross-reference any prior Everest coverage position letters by date" (ECF Doc. 79, p. 1) is immaterial, since the letter specifies that Everest "does not waive any prior positions taken with regard to these claims and completely reserves its rights to continue to assert all prior coverage positions, whether or not specifically incorporated herein" (ECF Doc. 78-8, p. 4). That same language also wholly undermines Seaman's argument that *Boone* renders all communications following the November 2020 letter discoverable "even if Everest *had* actually sent the May 2019 denial letter" (ECF Doc. 77, p. 3 (emphasis in original)), since the letter clearly indicates that Everest reserves its right to continue to assert its prior coverage denial.

Seaman argues that Marsh's letters asking all insurers to "update [their] coverage positions" in January and February 2020 are not reliable evidence that Seaman knew about the coverage denials because the letters were also tendered to "[t]he four other primary insurers to which Seaman tendered the Target Litigation," who "*did* issue written coverage positions for the Target Litigation in 2019." (ECF Doc. 79, p. 2 (emphasis in original).) This argument is not persuasive. As Everest argues: "[i]f, as Seaman now claims, it was true that Everest failed to

9

issue a coverage opinion nearly one year after the Target claims were tendered to it, Seaman's . . . insurance experts working on the Target claims surely would have included such a material fact in the January 3, 2020 and February 3, 2020 letters." (ECF Doc. 80, p. 3, n. 3.)

Ultimately, the undersigned must find that Everest denied Seaman's claims before the attorney-client privileged materials at issue here were created.  In addition to the claims file materials indicating that Everest made the decision to deny coverage in May 2019 (ECF Docs. 78-2, 80-7), was asked by Marsh to update its coverage position in letters in January and February 2020 (ECF Docs. 78-7, 80-2), and was asked by Marsh to reconsider its denial in a February 2020 telephone call (ECF Doc. 80-7, pp. 1, 3), other materials relevant to this litigation also broadly suggest that Everest was understood to have denied coverage from the early stages of the dispute.  (*See* ECF Doc. 1 ("Complaint"), pp. 10, 13-14, ¶¶ 45, 68, 72; ECF Doc. 80-1.)

Certainly, there is no documentary evidence demonstrating that Everest failed to issue a claims determination between the February 2019 report of loss and its November 2020 agreement to defend the action under a reservation of rights.  Indeed, Everest persuasively argues that "it is likely that Marsh or counsel for Seaman would have made a demand that Everest take a coverage position in its letters" if Everest had truly failed to respond to Seaman's demand for coverage for that length of time.  (ECF Doc. 80, p. 3, n. 4.)

Accordingly, for purposes of determining the application of the *Boone* exception, the undersigned finds that Everest denied Seaman's claim on or about May 24, 2019—and in any event, well before the creation date of any of the privileged documents sought by Seaman.  Because the *Boone* exception does not apply to any of the AC Documents, which were created after Everest's denial of coverage, Seaman's request to compel the production of the AC Documents is **DENIED**.

B.     **Whether Seaman is Entitled to In-Camera Review of Work Product Materials**

Although Seaman has requested in-camera review of 152 documents that were "withheld solely or partly on work product grounds" (ECF Doc. 77, pp. 1-2 (citing ECF Doc. 77-3)), all but ten of those documents were also withheld based on the attorney-client privilege (ECF Doc. 77-3). Because the undersigned found in Section II.A., *supra*, that the privileged documents are not discoverable under the *Boone* exception, there is no reason to consider an in-camera review of those protected documents to assess whether they are also protected by the work product doctrine. Thus, Seaman's request for in-camera review is limited to the ten documents withheld solely based on the work product doctrine ("WP Documents"). (ECF. Doc. 77-3.)

Seaman asks for an in-camera review to determine whether the documents meet the standard for work product protection. (ECF Doc. 77, p. 2.) Everest counters that the documents at issue are protected by Federal Rule of Civil Procedure 26(b)(3) because they were prepared in actual and objectively reasonable anticipation of litigation. (ECF Doc. 78, p. 1.)

1.     **Legal Standards for Work Product Doctrine and In-Camera Review**

The work-product doctrine is governed by federal law. FED. R. CIV. P. 26; *In re Pros. Direct Ins. Co.*, 578 F.3d at 438–39 (6th Cir. 2009); *In re Powerhouse Licensing, LLC*, 441 F.3d 467, 472 (6th Cir. 2006). Federal Rule of Civil Procedure 26(b)(3) provides: "[o]rdinarily, a party may not discover documents and tangible things that are prepared in anticipation of litigation or for trial by or for another party or its representative. . . ." FED. R. CIV. P. 26. Here, the parties dispute only whether the documents were prepared "in anticipation of litigation."

To determine whether documents were prepared in anticipation of litigation, courts look to: (1) whether the document was prepared "because of" a party's subjective anticipation of litigation; and (2) whether that subjective anticipation was objectively reasonable. *United States v. Roxworthy*, 457 F.3d 590, 594 (6th Cir. 2006). The party claiming attorney work product

11

protection has the burden to show that anticipated litigation was the "driving force" for preparing the documents. *Roxworthy*, 457 F.3d at 595 (citations omitted).

In-camera review of documents is permitted to determine whether a privilege applies. *See Zolin v. United States*, 491 U.S. 554, 565 (1994). The party seeking in-camera review must first "make some threshold showing that such review is appropriate," but a "lesser evidentiary showing is needed . . . than is required ultimately to overcome the privilege." *Zolin*, 491 U.S. at 570, 572. Ultimately, "whether to engage in camera review rests in the sound discretion of the district court." *Id.* Indeed, the Sixth Circuit "encourages use of *in camera* review sparingly. . . ." *Rugiero v. U.S. Dep't of Just.*, 257 F.3d 534, 544 (6th Cir. 2001).

**2. Seaman Has Not Made a Threshold Showing to Support In-Camera Review**

Seaman argues that it need not "make a prima-facie showing of bad faith before an in camera inspection . . . [is] warranted." (ECF Doc. 77, p. 3.) But in focusing on this argument, Seaman fails to recognize that it must nevertheless make "some threshold showing" that in-cameral review is appropriate. *See Zolin*, 491 U.S. at 570. Everest asserts in response that the attorney work product documents listed in the privilege log were "prepared 'because of' Everest's subjective anticipation of litigation," which subjective anticipation "was objectively reasonable." (ECF Doc. 78, p. 1 (citing FED. R. CIV. P. 26).)

As discussed in Section II.A., *supra*, the record reflects that Everest decided to deny coverage and issue a denial letter in May 2019 (ECF Docs. 78-2, 80-7), was asked by Marsh to update its coverage position in January and February 2020 (ECF Docs. 78-7, 80-2), was asked by Marsh to reconsider its denial in February 2020 (ECF Doc. 80-7, pp. 1, 3), and was contacted by co-defendant Zurich in May and July 2020, seeking communications between coverage counsel regarding a possible pro rata allocation of Seaman's defense costs (ECF Doc. 78-4).

All of those actions preceded the creation of the ten documents for which Everest seeks work product protection, between September 23 and October 28, 2020. (ECF Doc. 77-3, p. 2.) All ten documents are letters, and nine were authored by outside coverage counsel. (*Id*.) The final letter was drafted by Judith Frisina, who is described in the Complaint as Everest's "claim representative in connection with the Target Litigation." (*Id*.; ECF Doc. 1, p. 11, ¶ 53; *see* FED. R. CIV. P. 26(b)(3)(A) (work product doctrine not limited to attorneys).)

Based on a review of the record and the arguments, the undersigned finds that Seaman has not made even a threshold showing that an in-camera review is appropriate for the WP Documents. This finding alone supports denial of the request. But the record also affirmatively supports Everest's assertion that the documents are protected attorney work product. Thus, an in-camera review would "constitute ... an expenditure of judicial resources that could be justified only by an implicit determination that the representations made by defense counsel are untrue.'" *Guy v. United Healthcare Corp*., 154 F.R.D. 172, 176 (S.D. Ohio 1993).

For the reasons set forth above, Seaman's request for in-camera review of documents withheld by Everest as protected attorney work product is **DENIED**.

### III. Conclusion

For the reasons set forth above, the Court **DENIES** Seaman's request to compel the production of the documents withheld by Everest based on attorney client privilege (ECF Doc. 77-2) and **DENIES** Seaman's request for an in-camera review of the documents withheld by Everest based on the work product doctrine.

IT IS SO ORDERED.

Dated: March 20, 2024

*/s/ Amanda M. Knapp*
AMANDA M. KNAPP
UNITED STATES MAGISTRATE JUDGE